458 So.2d 102 (1984)
Kathleen Dupre DUSENBERY, et al.
v.
McMoRAN EXPLORATION COMPANY, et al.
No. 83-C-1681.
Supreme Court of Louisiana.
October 15, 1984.
Rehearing Denied December 6, 1984.
*103 Dean A. Sutherland, S. Daniel Meeks, Hebert & Abbott, for applicant.
Grady C. Weeks, Authement, Weeks & Larke, Houma, John Blackwell, Gibbens & Blackwell, Richard N. Dicharry, Margot *104 Mazeau, Michael Bagot, Jr., Phelps, Dunbar, Marks, Claverie & Sims, E. Phelps Gay, Robert E. Peyton, Christovich & Kearney, New Orleans, John K. Hill, Lafayette, Phillip J. McMahon, McMahon, McCollam & Hargis, Houma, John J. McGuckin, Jr., John H. Musser, IV, Wegmann, Longenecker & Muser, Michael J. Maginnis, McGlinchey, Stafford & Mintz, New Orleans, for respondents.
LEMMON, Justice.
We granted certiorari in this wrongful death action solely to review the lower courts' denial of an incidental demand by McMoRan Exploration Company/Burmont Company, the joint venture which owned the oil well on which John Dusenbery was killed in a pressure explosion, for indemnity from Hart, Inc., the oilfield contractor whose employees negligently welded a nipple in the well's pressure system which was lighter than the nipple required by the specification. We now reverse, holding that McMoRan/Burmont, although solidarily liable to plaintiff as owner of the well which contained an unreasonably dangerous condition, is entitled to full indemnity against Hart, who created the unreasonably dangerous condition, which McMoRan/Burmont could not detect by visual inspection and of which McMoRan/Burmont had no actual knowledge.

I.
Dusenbery was an employee of Pel-Tex Oil Company, who had been hired by McMoRan/Burmont to drill and operate the well. During the operation, Pel-Tex contracted with Hart for Hart to perform the production hook-up according to Pel-Tex's specifications, which included the use of Schedule 80 nipples in the pressure system.
The pressure explosion occurred while Dusenberry was cleaning the flow lines on the well. In the cleaning process, called "pigging", the well pressure is turned off, and a polyurethane object, called a pig, is inserted into the pipeline. The pressure is then turned back on, and the pig is forced through the pipeline to the next well, removing the built-up paraffin residue as it travels along. The explosion occurred after Dusenbery had inserted the pig and turned the pressure back on, and Dusenbery was struck in the head by a flying object propelled by the blowout. Subsequent investigation determined that the failure occurred where Hart had used a Schedule 40 nipple in the system instead of the heavier Schedule 80 nipple required by the specifications.
The trial court found that Hart and McMoRan/Burmont were solidarily liable to plaintiffs, Hart on the basis of negligence and McMoRan/Burmont on the basis of strict liability. Because the liability of each defendant was founded on separate legal bases, the court refused McMoRan/Burmont's demand for indemnity against Hart. The appellate court affirmed, reasoning that McMoRan/Burmont was not entitled to indemnity because its liability was not vicarious. 433 So.2d 268. We granted the application for review limited solely to that issue. 441 So.2d 208.

II.
The court of appeal erred in restricting indemnity to cases of vicarious liability.[1] Indemnity is available in some (but not all) cases of strict liability. To determine the availability of indemnity, it is necessary to examine the basis for imposition of strict liability in the particular case.
As owner of the well, McMoRan/Burmont was liable for Dusenbery's injuries upon proof that the well presented an unreasonable risk of injury which resulted in plaintiffs' damages. It was not necessary for plaintiffs to prove that McMoRan/Burmont either created the risk or knew of the danger and failed to remedy it. The owner of a structure has an absolute *105 duty to discover its hazards, and he is held liable to an injured party upon proof that damages resulted from a hazard in the structure that he failed to discover and correct, whether or not the hazard was created by the owner and whether or not the hazard was visibly detectable. This liability is strict in the sense that it is imposed without the requirement of proof of negligence or actual fault. Olsen v. Shell Oil Co., 365 So.2d 1285 (La.1978). Rather, liability is imposed on the basis of the owner's relationship with the damage-causing structure (the same basis upon which the duty to discover is imposed). Kent v. Gulf States Utilities, 418 So.2d 493 (La.1982).
Of course, the injured party may also recover his damages from the party who actually created the dangerous condition (whether or not that party is the owner of the structure) or from a party who knew of the dangerous condition and had a duty to correct it but failed to do so. Liability in such an instance is imposed on the basis of negligence or actual fault.
The indemnification claim is based not on the relationship between the owner of the structure and the injured party, but upon the relationship between the owner and the party who actually created the dangerous condition in the structure. When liability to the injured party is imposed on one party on the basis of strict liability only and on a second party on the basis of negligence or actual fault, the strict liability defendant may recover full indemnity by incidental demand against the party actually at fault.[2]Appalachian Corp. v. Brooklyn Cooperage Co., 151 La. 41, 91 So. 539 (1922). While both defendants are liable to the injured party, the defendant who is liable only as the owner of the unreasonably dangerous structure should be made whole by the defendant who actually caused the unreasonably dangerous condition for which the owner is strictly liable. As between the two defendants, ultimate responsibility rests with the party who was actually at fault, and the fact that the law imposed liability on the owner to the injured party does not detract from the owner's right to indemnification against the party who actually created the dangerous condition.[3] The defendant whose actual fault has been proved by the claimant on the principal demand may prevail on the strict liability defendant's incidental demand for indemnification only by proving affirmatively that the strict liability defendant was guilty of concurrent fault.[4]
In the Appalachian case, a night watchman was injured by a falling door two days after Appalachian purchased a warehouse, but while the previous owner was still in possession. Having been cast for damages and having paid the judgment, Appalachian sought indemnity from the previous owner, who filed an exception of no cause of action. This court held that a party only technically at fault, because of a failure to perform some legal duty, could recover indemnity from the party whose negligence actually caused the damage. The court reasoned that the previous owner (according *106 to the facts alleged in the petition) was negligent for having created the situation which brought about the injury and that the new owner, not yet having taken possession, did not have knowledge of the defect or the opportunity to remedy it. Accordingly, the court held that Appalachian had stated a cause of action for indemnification.
This court recently reiterated the Appalachian doctrine in Narcise v. Illinois Central Gulf Railroad, 427 So.2d 1192 (La. 1983). In Narcise, defendant railroad, which had been held liable to plaintiff under the FELA, sought indemnification from the manufacturer of the defective equipment that caused plaintiff's injuries. Answering questions certified to us from the United States Court of Appeals for the Fifth Circuit, we held that the railroad (who was the lessee of the defective equipment) and the equipment manufacturer could be solidary obligors to the injured party, but noted that the railroad's third party demand stated a claim for "relief by way of contribution or possibly by way of indemnification, depending on the jury's fault weighing process".[5] 427 So.2d at 1196. The fact that the railroad's liability to plaintiff was based on FELA and the manufacturer's liability to plaintiff was based on general tort law did not change the rule of Appalachian that indemnification is allowed between solidary debtors when one party is liable only on the basis of strict liability for an undiscovered dangerous condition of the owned structure while the other is liable for actually creating the unreasonably dangerous condition.[6]

III.
In the present case, McMoRan/Burmont was liable to the injured party (just as the new owner was in the Appalachian case) not because of any "negligence on its part, independently of or in combination with [Hart], but because of the ownership of the [structure] and its legal duty to keep the [structure] in safe condition". 91 So. at 542. Hart was liable, on the other hand, because it actually created the hazard by fabricating the well with a substandard launching system. Because Hart was actually negligent and McMoRan/Burmont was only liable on the basis of strict liability as the owner of the well, McMoRan/Burmont is entitled to recover indemnity from Hart, unless Hart proved that McMoRan/Burmont was also actually negligent. Upon such proof, McMoRan/Burmont's incidental demand would be limited to contribution.
Hart points out that the trial court in reasons for judgment stated that "employment of the Schedule 40 nipple, in combination with the lack of support of the weight of the launching system hanging from the Nipple, ultimately caused the defective Schedule 40 Nipple to fail". (Emphasis supplied.) Hart therefore argues that the trial court found McMoRan/Burmont was concurrently negligent in failing to provide adequate support for the launching system and that this failure was a concurrent cause of the accident.
The trial court's statement is not tantamount to a finding of negligence on the part of McMoRan/Burmont. The trial court expressly held McMoRan/Burmont liable under strict liability and never reached the question of negligence.
After a thorough review of the record, we conclude that Hart failed to prove a basis for holding McMoRan/Burmont liable in negligence. The trial court relied heavily on the testimony of Dr. Courtney Busch, an expert in metallurgy and mechanical engineering. Dr. Busch opined that the nipple would not have *107 failed if Hart had used a Schedule 80 nipple as specified, and the trial judge found that a Schedule 80 nipple "would have been sufficient to hold". Therefore, since the use of a Schedule 80 nipple would have prevented the blowout, the improper use of a Schedule 40 nipple was a cause-in-fact of the accident. On the other hand, Hart failed to prove that greater support for the launching system would have prevented the accident. Moreover, while a competent welder should have noticed that the lighter nipple was being welded to a heavier-walled flange, the defect of inadequate thickness could not be detected visually once the lighter nipple was installed. We therefore conclude that Hart failed to prove McMoRan/Burmont was negligent or actually at fault with regard to the use of the Schedule 40 nipple which caused this accident.
Accordingly, the judgments of the lower courts are reversed in part, and judgment is rendered in favor of McMoRan/Burmont on its third party demand against Hart for full indemnity.
DIXON, C.J., and MARCUS and DENNIS, JJ., concur.
WATSON, J., dissents and assigns reasons.
WATSON, Justice, dissenting.
The Schedule 40 nipple had been a part of Burmont/McMoRan's well for six years prior to the fatal accident. It is extremely difficult to justify complete exoneration of a well owner having complete custody and control for a long period of time.
There is evidence that Burmont/McMoRan failed to perform ordinary preventative maintenance on Well B-5D that could have revealed the problem with the nipple. Burmont/McMoRan compounded the problem by adding the paraffin scraper which put additional weight on the Schedule 40 nipple and thereby put too much stress upon the launch system.
Because of the extra weight, along with the undetected inadequate nipple, Burmont/McMoRan should share responsibility for the death of John Dusenbery with Hart, Inc., and is not entitled to indemnity since it was actually negligent and not just strictly liable.
Therefore, I respectfully dissent.

On Application for Rehearing
PER CURIAM.
On application for rehearing, Hart complains that our original opinion places the burden on the third party defendant to defeat the incidental demand by proving negligence on the part of the third party plaintiff. Hart argues that the burden of proof should be on the party seeking relief by means of the third party demand.
When two defendants are held solidarily liable to the plaintiff in this type of proceeding, contribution among solidary obligors is the rule, in the absence of other evidence. However, the evidence presented by the plaintiff in the present case established that Hart was negligent, while not showing any negligence on the part of McMoRan/Burmont. Thus, when plaintiff rested, the evidence entitled McMoRan/Burmont to a judgment on its third party demand for indemnity, and it was up to Hart to overcome McMoRan/Burmont's entitlement to indemnity by presenting evidence of McMoRan/Burmont's independent negligence.
This court's original opinion did not place any burden of proof on Hart. Rather, our opinion simply placed on Hart the burden to proceed with the evidence, at the point that the evidence showed negligence only on Hart's part.
WATSON, J., would grant.
NOTES
[1] Indeed, indemnity may not be available at all in many cases of vicarious liability. It is doubtful that indemnity would be allowed to an employer against an employee for simple negligence, since such recovery is contrary to the very purpose of imposing vicarious liability on an employer who benefits from the services of the employee in the course of his employment.
[2] The negligence or actual fault of a third party may entitle the owner to full indemnity as between the defendants (or possibly even to exoneration from the injured party's claim for damages, if the third party is a stranger to the owner rather than a person acting with the owner's consent in the performance of the owner's non-delegable duty to keep the structure in repair).
[3] This is not to say that indemnity is available in every case in which there is one strict liability defendant and one negligent defendant. Indemnity is available only when, as in the present case, the strict liability defendant is liable to the injured party on the basis of responsibility, imposed without proof of negligence, for an unreasonably dangerous condition which the negligent defendant actually created and which the strict liability defendant neither concurrently caused nor had an opportunity to actually discover and remedy.
[4] This case is distinguishable from Hunt v. City Stores, Inc., 387 So.2d 585 (La.1980), in which the operator of a department store that contained an escalator with an unreasonably dangerous condition was denied indemnity against the elevator manufacturer. The court held that the evidence did not establish "greater fault" on the part of the manufacturer, since both parties were aware of the risks which caused the injury and both failed to provide a warning.
[5] With regard to the contribution versus indemnity issue, this court further noted:

"The legislative adoption of a comparative fault system, which requires that the fault of all parties be quantified, possibly will do away to a large extent with the necessity of distinguishing between contribution and indemnity among solidary tort obligors." 427 So.2d at 1196, n. 5.
[6] This rule is followed in other jurisdictions. See J. Dooley, Modern Tort Law §§ 26.07, 26.10 (1982); W. Prosser, Law of Torts § 51 (1971).