468 So.2d 695 (1985)
Beverly Vicknair Wife of/and Floyd VICKNAIR
v.
HIBERNIA BUILDING CORPORATION and United States Fidelity and Guaranty Company.
No. CA 1473.
Court of Appeal of Louisiana, Fourth Circuit.
April 11, 1985.
Writs Granted June 17, 1985.
*696 Frank J. D'Amico, and Vincent J. Glorioso, Jr., Glorioso, Welcher & Zaunbrecher, New Orleans, for plaintiff-appellee.
Franklin D. Beahm, Robert D. Ford, Hammett, Leake & Hammett, New Orleans, for defendant-appellant.
Before GARRISON, KLEES and WARD, JJ.

ON REMAND
GARRISON, Judge.
This court initially considered this matter in Vicknair v. Hibernia Building Corp., 459 So.2d 685 (La.App. 4th, 1984), hereinafter "Vicknair I". Writs were taken to the Louisiana Supreme Court by both parties and were granted in both instances (Numbers 84-C-2114, 462 So.2d 887 and 84-C-2123, 461 So.2d 1054) and in both instances the majority stated:
"Granted. The judgment of the Court of Appeal is vacated and set aside; the case is remanded to the Court of Appeal for decision."
In Vicknair I the original appeal was from a judgment of the district court rendered December 9, 1982 in conformity with a jury verdict with interrogatories, awarding damages in the amount of $5,980.00 to Floyd Vicknair, the amount of $5,000 to Beverly Vicknair, and the amount of $50,000.00 to Eric Vicknair for injuries sustained by Beverly Vicknair and the then unborn Eric Vicknair on November 3, 1976. On that date, the then seven to eight months pregnant Beverly Vicknair was *697 forced to descend 21 flights of stairs in response to a false fire alarm.
As a result thereof, Beverly Vicknair suffered premature vaginal bleeding which led to premature labor and premature delivery of her first baby which was due on or about December 29, 1976. At birth, Erick Vicknair was cyanotic and required resuscitation. He was diagnosed as having Respiratory Distress Syndrome and ultimately Hyaline Membrane Disease of the lungs. Eric Vicknair, born at Lakeside Hospital, was immediately transferred to the Neonatal Intensive Care Unit of Ochsner Hospital for several weeks. Thereafter he was transferred back to Lakeside Hospital for several days before discharge. As stated in Vicknair I, the child Eric has contracted an abnormally high number of respiratory illnesses which are related to the premature birth and resultant lung immaturity.

I. Procedural History
Plaintiff filed suit on October 25, 1977 against Hibernia and its insurer. On November 9, 1977, Hibernia filed an Answer consisting of a general denial and alternative pleas that the sole negligence of Vicknair was the cause or that Vicknair was contributorily negligent. On October 10, 1978 Hibernia filed a third party demand against Broadmoor Corp., seeking indemnification. On January 31, 1979, plaintiff filed a First Supplemental and Amending Petition adding Broadmoor Corp. as a defendant.
On February 15, 1979 Broadmoor answered plaintiff's amended petition. On February 13, 1979[1] Broadmoor amended its Answer to add a Reconventional Demand seeking indemnification and contribution from Hibernia and seeking a jury trial.
On March 7, 1979 Hibernia filed an Answer to Broadmoor's Reconventional Demand in which Hibernia was seeking indemnification and contribution. On March 14, 1979, Hibernia filed an exception of lack of procedural capacity and an exception of prescription on the minor Eric Vicknair's claim. On March 22, 1979, plaintiff filed a Second Supplemental Amending Petition curing the defect alleged under the exception of lack of procedural capacity and potentially rendering moot the question of prescription on the minor's claim. On April 30, 1979 Broadmoor filed an exception of lack of procedural capacity on the minor's claim.[2]
On December 3, 1980, plaintiff filed a motion to strike defendant's request for a jury trial which motion was continued indefinitely. On December 22, 1980, plaintiffs filed a Third Amending and Supplemental Petition adding North River Insurance Company (Broadmoor's insurer). Service was made on the Secretary of State's Office.
On January 5, 1981, Hibernia filed its Answer to the Amended Petition, reurging the exception of prescription as to Eric Vicknair and adding North River Insurance Co., U.S. Fire Insurance Co., International Surplus Lines Insurance Co., and Mission Insurance Co. as defendants. Hibernia alleged that all of the insurance companies provided insurance to cover Hibernia under the renovation contract, that all of the companies had refused to defend Hibernia as required under their policies and that all of the companies were liable to Hibernia for both damages Hibernia may be compelled to pay and attorneys fees incurred in the defense. Service of process was requested through the Secretary of State's Office, but no returns are contained in the original record. Nonetheless on March 17, 1981, the attorney representing Broadmoor filed an Answer consisting of a general denial on behalf of North River Insurance Co., U.S. Fire Insurance Co., and International Surplus Lines Insurance. On April 14, 1981, counsel for Broadmoor filed an Answer *698 on behalf of Mission Insurance Company.
Trial before a jury commenced on November 23, 1982. During the second day of trial Hibernia and Broadmoor confected an agreement whereby Broadmoor agreed to indemnify Hibernia for any losses it might suffer and Broadmoor assumed the defense for both co-defendants.
The agreement, as recited on the record, provided as follows:
"MR. FERINGA:
In connection with the Court's recitation, there has been reached a settlement on the third party demands and the reconventional demand that the Judge recited between the Hibernia Building Corporation, its insurer, U.S.F. & G., and the Broadmoor Corporation, and the four insurance companies, North River Insurance Company, Mission Insurance Company, U.S.F. & G. and International Surplus Lines Insurance Company.
The settlement is that the third party defendants, Broadmoor Corporation, North River Insurance Company, U.S.F. & G., International Surplus Lines Insurance Company and Mission Insurance Company jointly and severally agreed to henceforth defend and fully and completely indemnify and hold harmless the Hibernia Building Corporation and U.S.F. & G. Insurance Company from any possible judgement (sic) of any sort that might be rendered in this case in favor of the plaintiffs Beverly Vicknair and her husband and the minor child, Eric Vicknair, who is represented through his parents. The reconventional demand which was filed in this matter by the Broadmoor Corporation and any of its insurers will be dismissed with prejudice. Each party to bear its own respective costs of court. The third party demand against Broadmoor Corporation and the North River Insurance Company, U.S.F. & G., International Surplus Lines Insurance Company and Mission Insurance Company will be dismissed with prejudice by U.S.F. & G. and the Hibernia Building Corporation in consideration of the guarantee to pay any possible judgement (sic) that might be rendered in this case and in payment of attorney fees and costs to the Hibernia Building Corporation and U.S.F. & G. in the amount of $3,000.00. When all of that is accomplished, the dismissal will be with prejudice and each party to bear its own costs.
THE COURT:
It is to be stated as follows: The reconventional demand by the Broadmoor Corporation against the Hibernia Building Corporation is voluntarily hereby dismissed by the Broadmoor Corporation against the Hibernia Building Corporation and U.S.F. & G. with prejudice. The third party demand by the Hibernia Building Corporation and U.S.F. & G. against Broadmoor Corporation and those four named insurers that were recited several times supra is hereby settled and dismissed by the Hibernia Building Corporation for the agreed to settlement of the Broadmoor Corporation and its above-named insurers for the sum of $3,000.00.
MR. FERINGA:
And they are defending and giving defense counsel and paying any possible award and taking any other appeals and doing everything else necessary, and agrees to indemnify and hold harmless the Hibernia Building Corporation and its insurer, U.S.F. & G., for any and all judgements (sic) that may be rendered herein in behalf of the plaintiffs against the Hibernia Building Corporation and U.S.F. & G., and in addition the Broadmoor Corporation and its four abovenamed insurers agrees (sic) to provide the defense to the Hibernia Building Corporation in any appeals that may be taken in behalf of the Hibernia Building Corporation and its insurer, U.S.F. & G.
THE COURT:
The above-mentioned stipulation recited by Mr. Feringa and also in as first by the Court, is hereby agreed by you on behalf of your clients, is that correct?
MR. BOWERS:
Yes, sir, it is.

*699 THE COURT:
Let the record so reflect." (Tr. p. 71-75).
The trial judge explained that agreement to the jury as follows:
"... Let the record reflect that the jury is now in the jury box for the second day. The reason why we took so long is that the following has taken place and I want to explain it to you.
As you recall, we had two defendants in the case, we had the Hibernia Building Corporation and the Broadmoor Corporation. The Hibernia Building Corporation is the name of the corporation that owns the Hibernia Bank Building in which the work was being done. The Broadmoor Corporation was the contractor doing the renovation work in the building. An agreement has been made between the Hibernia Building Corporation and Broadmoor Corporation. You will note that Mr. Feringa has left, that he is not here anymore and won't be here anymore in this trial. An agreement has been made that Mr. Bowers and the Broadmoor Corporation and their insurance companies will take up and provide the defense for the Hibernia Building Corporation under a contract of insurance that Hibernia Building Corporation and Broadmoor Corporation had. There was some dispute up until this day and that is why Mr. Feringa in opening arguments had mentioned to you why you buy an insurance policy, et cetera, to defend you and they are arguing up to this day and they have reached an agreement among themselves.
I am happy with that because it simplifies the trial. You won't have to go into insurance contracts, going into the idea of indemnity, because all of those issues are out. The Broadmoor Corporation and its insurers have agreed to defend the case. That deal was made between those two. The plaintiff, Mr. and Mrs. Vicknair, have not received any settlement or any monies from the Hibernia Building Corporation, so that should be in your mind. Hibernia Building Corporation did not settle with the plaintiffs and the plaintiffs did not receive any monies from that defendant. Sometimes when we have cases with a few defendants during the course of the trial one of the defendants will settle out with the plaintiff because they feel they don't want to go any further and put up X amount of money to get out, but that is not the case herein. On Monday, when you decide this case, if you decide to give her any money you should not think that she got something from the Hibernia Building Corporation, because she did not get anything from them." (Tr. p. 75-78).
At the close of trial, the judge instructed the jury in part as follows:
"... Now, in this case, let us discuss the concepts of negligence and proximate cause. The plaintiffs in this case allege that Mrs. Vicknair and her son and the husband, as head and master of the community, suffered certain damages because of the alleged negligence of the two defendants, Hibernia Building Corporation and Broadmoor Corporation. What do we mean by negligence? One of the articles in our civil code, and you will kind of generally know that in Louisiana we follow the French law more generally than the English common law and one of our articles in our Louisiana Civil Code, Article 2315 says in part, `Every act whatsoever of man that causes damages to another obliges him by whose fault it happened to repair it.' Thus if any of us caused damage to our fellow man then we are obliged under our civil law to repair it.

Therefore, fault is negligence and we define negligence as the doing of some act which a reasonably prudent person would not do or the failure to do something which a reasonably prudent person would do when prompted by considerations which ordinarily regulate the conduct of human affairs. It is, in other words, a failure to use ordinary care under the circumstances. Ordinary care is that care which reasonably prudent persons exercise in the management of *700 their affairs in order to avoid injury to themselves or to others. That is to say, that in deciding whether care was exercised in this case, it must be viewed in light of all the circumstances as shown in the case. This is the concept of negligence as defined by our Code and also by our law.
* * * * * *
... If the plaintiff satisfies its burden of proof, then it is incumbent upon the defendants to prove themselves free of negligence. In other words, in this case, unlike an automobile accident where perhaps the negligence could be part of the plaintiff bringing the lawsuit, there is nothing here that the plaintiff did which caused the fire alarm to go off and the evacuation announcement to be given, so she is free of any negligence herein. And an incident did happen, there was an incident in which she alleges injuries. I'll brief you on that later, but I will just say now because you may find negligence on the part of the defendants and because you may say, `Well, the thing does speak for itself,' and the defendants have failed to explain a way that they were not guilty of negligence.
In order to award damages, you must find that the injuries were the proximate cause of this incident that happened. What do we mean by proximate cause? By proximate cause, we mean the primary or moving cause or that which is natural and continuing sequence unbroken by any intervening cause producing the injury and without which the injury would not have happened. Therefore, in this case if you find that either of the defendants, the Hibernia Building Corporation or the Broadmoor Corporation, were guilty of any negligence herein and the negligence was the proximate cause of any injuries sustained by Mrs. Vicknair and her son, Eric, then you must render a verdict in behalf of the plaintiffs. But again, in fairness to the defendants, I reiterate that the injuries complained of must have been caused by the incident that we heard testimony on, that is, the fire alarm going off and the announcement. There is no proof at all of any contributory negligence herein or assumption, so if you find that the defendants were negligent, either one, and that those injuries that you heard testimony about were caused by that incident, then you must award to the plaintiffs because the plaintiff did nothing to bring about the incident involved.
* * * * * *
... This is not a court of sympathy, it is a court of law and we should give the judgement (sic) that we feel is reasonably fair and one which you feel would properly compensate the plaintiffs. As I mentioned to you earlier, we will go to the next courtroom for deliberations. You are to pick one of you as the foreman. The purpose of the foreman is to lead in the discussions and to sign my verdict form. Nine of the twelve of you must agree on a verdict.
We will go over the questions on the verdict sheet. `Was the defendant, Broadmoor Corporation, guilty of negligence and was its negligence the proximate cause of the injuries sustained by the plaintiffs herein?' You will answer that yes or no. `Was the defendant, Hibernia Building Corporation, guilty of negligence and was its negligence the proximate cause of the injuries sustained by the plaintiffs herein?' You will answer that yes or no. So the first two questions deal with the negligence. Either the contractor, Broadmoor, or the owner of the building, Hibernia Building Corporation. If your answer is no to both of the questions above, then you are finished. In other words, you found that neither of the defendants was guilty of negligence and there isn't anything for you to give. So, if you answer no to both of these, don't go any further. If you answer yes to either of these, then complete the following. `We award to Floyd Vicknair as head and master of the community, the following: The medical expenses incurred by his wife Beverly and son Eric and lost wages and total *701 special damages.' In Louisiana, the husband as head and master sues for the out of pocket expenses. So, we award to Floyd Vicknair as the father and husband any medical expenses you feel that were incurred by his wife Beverly and his son Eric and any lost wages incurred by his wife Beverly. The next question is, `We award to the plaintiff Beverly Vicknair the following damages: Whatever physical, mental suffering, past, present and future,' that you feel if any. That would be in her own name for any pain and suffering. And then to the son, `We award to Floyd Vicknair as the administrator of/and for the use and benefit of his minor son, Eric, the following damages: Physical pain and suffering that you feel Eric has incurred, if any. In Louisiana law a child up to eighteen years of age cannot sue in his or her name. The father must sue if the parents are together and if the parents are divorced, then the mother as custodian of the child sues. So if you decide there should be an award of damages, you first give those special damages to the father, that is, the out of pocket expenses, and then you give to Beverly Vicknair herself whatever you feel she incurred, and if you find the child incurred anything, you will give to the father in his behalf.
The foreman signs this form and we put the date. The exhibits will be brought by my clerk with you to the room next door. You have the right to review and examine and consider the exhibits to whatever degree you feel you want to. You will now go with my clerk to deliberate." (Tr. p. 176-188) (emphasis added).
Thus the trial judge consistently instructed the jury that "either" of the defendants could be found negligent by consistently using the language "either/or". At no time did he instruct the jury that both parties could be found concurrently or simultaneously at fault.
The jury answered the interrogatories as follows:
"1. Was the Defendant, Broadmoor Corporation, guilty of negligence and was its negligence a proximate cause of the injuries sustained by the Plaintiffs herein?
 YES X NO___
2. Was the Defendant, Hibernia Building Corporation, guilty of negligence and was its negligence a proximate cause of the injuries sustained by the Plaintiffs herein?
 YES___ NO X 
If your answer is NO to BOTH of the two above questions, then go no further.
If your answer is YES to EITHER of the two above questions, then answer the following:
3. WE AWARD to Floyd Vicknair, as Head and Master of the Community the following damages:
Medical Expenses incurred by his wife, Beverly, and son, Eric
 $5,980.00
Lost Wages incurred by his wife, Beverly
 $ None 
Total Special Damages
 $5,980.00
4. WE AWARD to the Plaintiff, Beverly Vicknair, the following damages:
Physical and mental pain and suffering, past, present and future
 $5,000.00
5. WE AWARD to Floyd Vicknair as Administrator of and for the Use and Benefit of his Minor Son, Eric, the following damages:
Physical and mental pain and suffering, past, present and future
 $50,000.00
As is apparent, above, the interrogatories failed to present the jury with a question as to whether both defendants were potentially liable. Thus the jury was never presented with a clear choice encompassing the possibility that both defendants could be found liable. This lack of choice compounded by the agreement between co-defendants could have easily lulled the jury into believing that "they could only pick one defendant and since "`A' was already out of the suit, they should find against `B'", if at all.
*702 Judgment was entered in favor of the Vicknairs as against Broadmoor, and dismissing suit against Hibernia.
Broadmoor appealed and plaintiffs filed an answer to the appeal. Hibernia had not appealed, nor has it intervened on appeal. On appeal, Broadmoor further raises an exception of prescription arguing that since Hibernia is not a joint tortfeasor with it, prescription was not interrupted by the suit filed against Hibernia. Broadmoor further argues that since suit was not filed against it until approximately two and one-half years later, the case had prescribed before suit was filed.

II. Liability
The jury considered Hibernia's liability only under the question of negligence under C.C.Art. 2315. We find that Hibernia could easily be a joint tortfeasor, not by operation of facts, but by operation of law under the concept of vicarious liability under C.C.Art. 2320.
At the time of the false alarm Hibernia's building department had done and was doing some of its own internal renovation work. Accordingly, Hibernia was in the "trade, business, or occupation" of renovation such that it was the statutory employer of Broadmoor. As Broadmoor was its statutory employee, Hibernia is liable for the tortious actions of its employee under C.C.Art. 2320 which provides in part:
"... employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.
* * * * * *
In the above cases, responsibility only attaches, when the ... employers ... might have prevented the act which caused the damage, and have not done it."
In the instant case, Hibernia officials were called to the site to examine the wire in question in order to determine if it was or was not a fire alarm wire. In every other instance in which a fire alarm was moved, Broadmoor did not do the work, but rather Honeywell, the company responsible for maintenance of the alarm system, was called by Hibernia employees in order to prevent the triggering of a false alarm. Neither Hibernia officials nor Broadmoor workers were able to determine if the wire was or was not part of the alarm system, although both inspected it the day before the incident. At that point, Honeywell should have been called by Hibernia employees as it had been called in all the other cases. Unfortunately, Honeywell was not called. Hibernia could have easily prevented the false alarm by following routine procedures and it failed to do so.
The trial judge instructed the jury only on C.C. Art. 2315 liability but never mentioned C.C. Art. 2320, 2322 or 2317.
C.C. Art. 2317 provides for the strict liability of the landowner and is a theory of potential liability in addition to actual negligence under C.C. Art. 2315 and C.C. Art. 2320. In Dusenbery v. McMoRan Exploration Co., 458 So.2d 102 (La., 1984) the Louisiana Supreme Court addressed a similar situation. In Dusenbery, plaintiff, an employee of Pel-Tex Oil Co., was killed while working on a rig owned by McMoRan. Hart, Inc. had been hired by Pel-Tex to perform production hook-up according to Pel-Tex's specifications which included a Schedule 80 nipple. A pressure explosion occurred and Dusenbery was killed by a flying object propelled by the blowout. It was later determined that the explosion occurred as a result of Hart's use of a Schedule 40 nipple instead of the Schedule 80 nipple specified.
In Dusenbery, the Supreme Court stated:
"As owner of the well, McMoRan/Burmont was liable for Dusenbery's injuries upon proof that the well presented an unreasonable risk of injury which resulted in plaintiffs' damages. It was not necessary for plaintiffs to prove that McMoRan/Burmont either created the risk or knew of the danger and failed to remedy it. The owner of a structure has an absolute duty to discover its hazards, and he is held liable to an injured party upon proof that damages resulted from a *703 hazard in the structure that he failed to discover and correct, whether or not the hazard was created by the owner and whether or not the hazard was visibly detectable. This liability is strict in the sense that it is imposed without the requirement of proof of negligence or actual fault. Olsen v. Shell Oil Co., 365 So.2d 1285 (La.1978). Rather, liability is imposed on the basis of the owner's relationship with the damage-causing structure (the same basis upon which the duty to discover is imposed). Kent v. Gulf States Utilities, 418 So.2d 493 (La.1982). Of course, the injured party may also recover his damages from the party who actually created the dangerous condition (whether or not that party is the owner of the structure) or from a party who knew of the dangerous condition and had a duty to correct it but failed to do so. Liability in such an instance is imposed on the basis of negligence or actual fault. The indemnification claim is based not on the relationship between the owner of the structure and the injured party, but upon the relationship between the owner and the party who actually created the dangerous condition in the structure. When liability to the injured party is imposed on one party on the basis of strict liability only and on a second party on the basis of negligence or actual fault, the strict liability defendant may recover full indemnity by incidental demand against the party actually at fault. Appalachian Corp. v. Brooklyn Cooperage Co., 151 La. 41, 91 So. 539 (1922). While both defendants are liable to the injured party, the defendant who is liable only as the owner of the unreasonably dangerous structure should be made whole by the defendant who actually caused the unreasonably dangerous condition for which the owner is strictly liable. As between the two defendants, ultimate responsibility rests with the party who was actually at fault, and the fact that the law imposed liability on the owner to the injured party does not detract from the owner's right to indemnification against the party who actually created the dangerous condition. The defendant whose actual fault has been proved by the claimant on the principal demand may prevail on the strict liability defendant's incidental demand for indemnification only by proving affirmatively that the strict liability defendant was guilty of concurrent fault." (AT 104-105) (emphasis added).
Thus under Dusenbery, the trier of fact erred in failing to find the landowner had an absolute duty to discover the defect in the wiring system whether or not visible and erred in failing to find Hibernia strictly liable under C.C. Art. 2317. The trier of fact, however, was never instructed on defendant's absolute duty to discover the defect or strict liability under C.C. Art. 2317 and thus did not even consider these issues. The failure of the trial judge to provide instructions to the jury on alternative theories of liability is clearly reversible error. The trial judge could have corrected this error by granting a judgment n.o.v. or granting a new trial, but he failed to do so.
In Scheidel v. Melle, 431 So.2d 420 (La. App. 4th, 1983) this court found that a civil mistrial had occurred stating:
"... Not the least of the effects of this ruling was that it deprived the jury of hearing evidence concerning the full range of options before it with regard to all defendants who might possibly be obligated to the plaintiff." (AT 421).
Accordingly, we conclude that the matter should be remanded for a new trial below.
After judgment was granted Broadmoor filed for the first time on appeal an exception of prescription the merits of which are predicated upon the above discussed judgment. As we have reversed the judgment, that exception is now moot.
For the reasons discussed, the judgment of the district court is reversed and the matter is remanded for further proceedings not inconsistent with the opinions expressed herein.
REVERSED AND REMANDED.
KLEES, J., concurs with written reasons.
*704 KLEES, Judge, concurring.
I agree with the majority in that the instructions were not sufficiently clear and were misleading. Nonetheless, the law as I read it hasn't changed since we handed down our original opinion in this case. It is clear that Hibernia is not before us on appeal, as Hibernia did not itself appeal or intervene in the appeal, and the Vicknairs did not appeal that portion of the judgment in favor of Hibernia. Although the Vicknairs did complain of the jury's findings regarding Hibernia in their answer to the appeal, it is well settled that a plaintiff cannot, by means of his answer, refute that portion of the trial court's judgment in favor of a non-appealing defendant. LSA-C.C.P. art. 2133; Shelton v. Aetna Casualty & Surety Co., 334 So.2d 406, 411 (La. 1976); American Ins. Co. v. Holland, 401 So.2d 421, 422 (La.App. 1st Cir.1981); Boxill v. Metrailer, 358 So.2d 986, 987 (La. App. 1st Cir.1978); Smith v. Girley, 242 So.2d 32, 36 (La.App. 1st Cir.1970); Barrois v. Noto, 215 So.2d 676, 684 (La.App. 4th Cir.1968).
Furthermore, I still believe that deciding whether Hibernia was a joint tortfeasor in this situation would be tantamount to reviewing the lower court's judgment in favor of Hibernia, something we could not undertake unless that portion of the judgment was before us on appeal. Despite plaintiffs' arguments to the contrary, I do not believe that we would merely be deciding the "status" of Hibernia in the same way that a trial court might decide the degree of fault attributable to an alleged joint tortfeasor who is not a party to the lawsuit. In such a case, because the absent tortfeasor has never been a party to the lawsuit, his rights will not be affected by the court's decision. However, in this instance Hibernia actually participated in the suit and received a definitive verdict in its favor. If a new jury were to find that Hibernia was a joint tortfeasor with Broadmoor, they would necessarily be reversing the jury verdict which judged Hibernia not liable and which is now a final judgment.
Plaintiffs stress that they do not seek any relief against Hibernia, merely an affirmance of the judgment against Broadmoor. For this reason, they contend that the instant case is different from American Insurance Co. v. Holland, supra, which we cited in our prior opinion. In Holland, the First Circuit held that it had no jurisdiction to review a judgment in favor of a non-appealing defendant where the plaintiff had answered a co-defendant's appeal with respect to both defendants, but had not appealed separately the judgment in favor of the non-appealing party. We still believe that Holland is apposite to the instant situation. In this case, plaintiffs do not seek any relief against Hibernia because at the trial level, Broadmoor and Hibernia entered into a contract whereby Broadmoor agreed to fully indemnify Hibernia in any amount for which Hibernia might be cast in judgment to plaintiffs. Nevertheless, as stated originally, I do not believe that such an agreement can serve to alter the jurisdiction of this court.
Because the trial court found Hibernia not liable, Hibernia could not be a joint tortfeasor with Broadmoor. See Trahan v. Liberty Mutual Ins. Co., 314 So.2d 350 (La.1975); Gibson v. Exxon Corp., 360 So.2d 230 (La.App. 1st Cir.1978). In my view, a remand to the district court is still the decision that would best serve both law and equity in this situation.
NOTES
[1] This court is aware of the discrepancies in the two dates cited above, however, those are the dates reflected on the "Filed" stamp on those pleadings in the original record.
[2] An Exception of Res Judicata was also filed by Hibernia on the grounds of settlement. The trial court denied the exception finding that no settlement had been confected. As no writ was taken on this issue, it is not before this court.