855 F.2d 228
 The HARTFORD ACCIDENT & INDEMNITY CO., et al., Plaintiffs-Appellees,
v.
UNITED GENERAL INSURANCE COMPANY, Defendants,
Dennis Edward Jennings, as nominee for and on behalf of
Certain Underwriters at Lloyds London, et al., Appellants.
 No. 87-3742.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 20, 1988.
 
 John M. Futrell, New Orleans, La., for appellants.
 Terrence K. Knister, S. Daniel Meeks, New Orleans, La., for plaintiffs-appellees.
 Appeal from the United States District Court For the Eastern District of Louisiana.
 Before GEE, DAVIS, and SMITH, Circuit Judges.
 W. EUGENE DAVIS, Circuit Judge:
 
 
 1
 In this indemnification action, we review the district court's determination of coverage of a number of items by an excess insurer's policy. We affirm in part and reverse in part.
 
 I.
 
 2
 In September 1978, John Dusenbery was fatally injured while working on a wellhead. Thereafter his wife filed a wrongful death action against numerous companies, including Hart, Inc., and Burmont/McMoRan. Hart carried a $300,000 general liability insurance policy and a $200,000 excess liability insurance policy issued by United General Insurance Company (United General), and an additional $1,000,000 excess liability insurance policy issued by certain underwriters at Lloyds, London, Commercial Union Assurance of United Kingdom, Ltd., and Edinburgh Assurance Company (collectively, "Lloyds, London"). Burmont/McMoRan carried a $500,000 primary liability insurance policy issued by the Hartford Accident & Indemnity Company (The Hartford), and a $1,000,000 excess liability insurance policy issued by First State Insurance Company (First State). On July 15, 1982, a Louisiana trial court rendered judgment of $1,250,000 against Hart and Burmont/McMoRan, in solido. The court also dismissed the indemnity claim of Burmont/McMoRan against Hart. An intermediate appellate court affirmed, and the Louisiana Supreme Court granted review.
 
 
 3
 On February 3, 1984, prior to the Louisiana Supreme Court's decision, United General on behalf of Hart paid $780,645.05 ($500,000 policy limit; $164,754.66 pre-judgment interest; $115,890.72 post-judgment interest for the period from July 15, 1982, to January 30, 1984) into the trial court registry. On February 10, 1984, Lloyds, London paid $168,458.95 ($125,000 judgment; $41,188.67 pre-judgment interest; $2,260.28 post-judgment interest on Hart's share of the Dusenbery judgment for the period from January 30, 1984, to February 10, 1984).[1] On behalf of Burmont/McMoRan, The Hartford and First State paid $948,094.33 ($625,000 judgment; $204,942.61 pre-judgment interest; $118,151.72 post-judgment interest).
 
 
 4
 On October 15, 1984, the Louisiana Supreme Court held that Burmont/McMoRan[2] was entitled to full indemnification from Hart. Dusenbery v. McMoRan Exploration Co., 458 So.2d 102 (La.1984). On January 31, 1985, Lloyds, London paid $818,426.10 to Burmont/McMoRan, which was $129,668.23 less than the $948,094.33 paid by Hartford, which sum represents the principal amount of the indemnity judgment Hartford and Burmont/McMoRan obtained against Hart. Hartford's attempts to collect additional money from Hart were thwarted when Hart filed for bankruptcy. Thereafter, Burmont/McMoRan and Hartford filed suit in the court below against United General and Lloyds, London. Since the suit was filed, United General has been declared insolvent, leaving Lloyds, London as the sole solvent defendant.
 
 
 5
 The dispute presented to the district court related primarily to the amount of coverage that remained on Lloyds, London's $1,000,000 excess policy. Lloyds, London, which paid out a total of over $1,000,000 (payment of $168,458.95 on February 10, 1984, and $818,426.10 on January 31, 1985, plus miscellaneous expenses of over $14,000), contends that it has exhausted its limit. Hartford on the other hand contends that all of the sums paid by Lloyds, London in interest and miscellaneous expenses should not be credited against Lloyds, London's policy limit.
 
 
 6
 On August 14, 1987, the district court entered summary judgment against Lloyds, London for the following amounts:
 
 
 7
 1) $56,573.90 which the court determined remained on Lloyds, London's $1,000,000 policy limit. The court arrived at this figure by subtracting from the $1,000,000 limit Lloyds, London's February 10, 1984 payment of $125,000 on the principal of Dusenbery's judgment and Lloyds, London's January 31, 1985 payment of $818,426.10 to Hartford and Burmont/McMoRan. The court declined to give Lloyds, London credit against its limit for the interest and other miscellaneous payments it made;
 
 
 8
 2) $102,123.00 representing 12% interest on $875,000 from February 10, 1984 (date Burmont/McMoRan paid the Dusenbery judgment), to January 31, 1985 (date Lloyds, London paid $818,426.10 to Burmont/McMoRan);
 
 
 9
 3) legal interest from date of judicial demand until paid on items # 1 and # 2.
 
 
 10
 Lloyds, London timely filed this appeal. We address the propriety of the summary judgment by examining each of its three components in order.[3]
 
 II.
 A.
 
 11
 Lloyds, London argues first that the district court erred in holding that Lloyds, London owes an additional $56,573.90. The amount represents appeal bond costs of $13,215.05, pre-judgment interest of $41,188.67, and post-judgment interest of $2,260.28.[4] The district court determined that these payments should not be credited against Lloyds, London's policy limit. Lloyds, London argues on appeal, as it did in the district court, that these payments are a proper credit against its policy limit because its "ultimate net loss" of $1,000,000 is defined in the policy to include appeal bond costs and interest payments.[5]
 
 
 12
 All parties agree that Louisiana law requires an insurer to provide its insured with a defense unless the insurance policy unambiguously excludes a defense obligation. See Scarborough v. Northern Assurance Co., 718 F.2d 130, 134 (5th Cir.1983). Under the section of Lloyds, London's policy entitled "THIS POLICY IS SUBJECT TO THE FOLLOWING CONDITIONS," we find the following provision:
 
 
 13
 H. ASSISTANCE AND CO-OPERATION--
 
 
 14
 The Underwriters shall not be called upon to assume charge of the settlement or defense of any claim made or suit brought or proceeding instituted against the Assured but Underwriters shall have the right and shall be given the opportunity to associate with the Assured or the Assured's underlying insurers, or both, in the defense and control of any claim... (emphasis added).
 
 
 15
 The emphasized language unambiguously states that Lloyds, London was under no duty to defend Hart. Therefore, we see no reason not to follow the definition of "ultimate net loss" and credit the Lloyds, London policy limits for the expense it incurred on the appeal bond premium. Cf. Board of Commissioners v. M/V RACHAEL GUIDRY, 425 F.Supp. 661 (E.D.La.1977).
 
 
 16
 Lloyds, London also correctly asserts that its policy definition of "ultimate net loss" includes interest. But as to treatment of interest, Louisiana courts have held:
 
 
 17
 When a liability insurer is held liable, it must pay on behalf of its insured not only the principal policy limits, but also legal interest thereon from the date of judicial demand until paid. Any policy provision which attempts to limit the liability insurer's liability for legal interest from the date of judicial demand contravenes the public policy of La.R.S. 13:4203 and cannot be enforced.
 
 
 18
 Brown v. Southern Farm Bureau Ins. Co., 426 So.2d 684, 689 (La.App.1982); see also O'Donnell v. Fidelity General Ins. Co., 344 So.2d 91 (La.App.1977). The above language suggests that Lloyds, London must pay legal interest in addition to, and not as a part of, its policy limit and that policy provisions to the contrary violate public policy.
 
 
 19
 Lloyds, London argues, however, that in this unusual circumstance, "public policy" is not violated by enforcing its policy limit as written. Lloyds, London asserts that the public policy the Louisiana courts seek to promote by requiring insurers to pay interest in addition to its policy limit is that of La.R.S. 13:4203,[6] which provides generally that legal interest attaches from the date of judicial demand, i.e., from the date of filing the complaint, on all judgments in tort cases.
 
 
 20
 According to Lloyds, London, the enforcement of its policy limit as written to include legal interest does not contravene La.R.S. 13:4203 for two reasons: United General's action does not sound in tort and Louisiana's public policy is intended to benefit injured parties and insureds and not subrogated insurers.
 
 
 21
 We disagree with both prongs of Lloyds, London's argument. The Louisiana Supreme Court granted indemnity to Burmont/McMoRan because Hart's liability was predicated on its negligence while Burmont/McMoRan's liability was based on strict liability. Dusenbery v. McMoRan Exploration Co., 458 So.2d 102, 105 (La.1984). See also Appalachian Corp. v. Brooklyn Cooperage Co., 151 La. 41, 91 So. 539 (1922); Narcise v. Illinois Central Gulf Railroad, 427 So.2d 1192 (La.1983). The indemnity recovery was therefore granted on a tort rather than a contract theory.
 
 
 22
 We also see no reason a subrogated insurer cannot take advantage of the public policy of Louisiana. No Louisiana decision is cited for this proposition and in our view logic and reason do not support such a conclusion. It strikes us as arbitrary to hold that the rights of subrogation of Burmont/McMoRan's insurers are limited to Burmont/McMoRan's right to recover the principal amount of the debt. We know of no reason why the insurers should not be subrogated to their insured's right to collect the interest as well as the principal.
 
 
 23
 Relatedly, if Hart were solvent it would be obliged to pay the interest on Hartford's indemnity judgment. Thus, Lloyds, London would have us hold in effect that Hart's interest obligation would be covered by Lloyds, London's policy if Hart were solvent but Hart's interest obligation is not covered when Burmont/McMoRan or its insurer obtains a judgment against an insolvent Hart. We see no reason to draw such a fine distinction in the coverage afforded an insured and decline to add one more wrinkle to this already complex set of rules.
 
 
 24
 We next turn to Lloyds, London's payment of $2,260.28 in post-judgment interest that the district court declined to credit against Lloyds, London's limit. This interest accrued on Hart's share of the Dusenbery judgment from January 30, 1984 (the date through which United General paid post-judgment interest) until February 10 (when Lloyds, London paid the remainder of this judgment). For reasons stated in part B below, Lloyds, London's obligation to pay interest did not begin until February 3, 1984, the date United General paid its limit plus interest on that limit. Thus, because United General rather than Lloyds, London was responsible for the post-judgment interest from January 30 to February 3, the portion of Lloyds, London's $2,260.28 payment that represents interest for those three days should be credited against Lloyds, London's limit.
 
 
 25
 We agree with the district court's assessment of pre-judgment interest against Lloyds, London but we disagree with the imposition of appeal bond costs and post-judgment interest from January 30, 1984, to February 3, 1984, against Lloyds, London. Thus, the judgment should be modified on remand by deleting the appeal bond cost, the post-judgment interest paid between January 30 and February 3, 1984, and recomputing the interest on the amount recoverable on this item.
 
 B.
 
 26
 Lloyds, London next argues that the district court erred in assessing post-judgment interest against it. Lloyds, London points out that the $780,645.05 United General paid into the court registry on February 3, 1984, to satisfy its obligation under the Dusenbery judgment, only included post-judgment interest through January 30, 1984. Because United General did not pay its entire interest obligation on February 3, Lloyds, London argues that the interest on the indemnity judgment continues to accrue to the account of United General and is not covered under the Lloyds, London excess policy. In support of this argument, Lloyds, London relies primarily on Inabinet v. State Farm Automobile Insurance Co., 262 So.2d 920 (La.App.1972), Dobson v. Aetna Casualty & Surety Co., 484 So.2d 976 (La.App.1986) and Doty v. Central Mutual Insurance Co., 186 So.2d 328 (La.App.1966).
 
 
 27
 Lloyds, London's reliance on those cases is misplaced. They stand for the proposition that a primary insurer whose policy contains a supplemental pay provision, such as the one in United General's policy, must pay interest on the entire judgment (including any amount in excess of its policy limit) until: (1) the primary carrier tenders or pays its policy limit and (2) the primary carrier pays the accrued interest on its policy limit. Inabinet makes clear that once the primary carrier has taken the two steps noted above, interest on any judgment in excess of the primary carrier's policy limits no longer accrues to the account of the primary carrier.
 
 
 28
 McKenzie and Johnson, in their recent treatise on Louisiana insurance law, confirm this rule. They write:
 
 
 29
 Thus the primary and excess insurers are liable for judicial interest on their respective layers of liability from the date of judicial demand until entry of judgment. Then, the responsibility of the primary carrier under the supplementary payments provision is triggered and the primary carrier becomes liable for all interest from date of entry of the judgment until payment of the primary limits.
 
 
 30
 W. McKenzie and H. Johnson, 15 La. Civil Law Treatise Sec. 33 at 439 (1986).
 
 
 31
 In this case it is uncontested that on February 3, 1984, United General paid Dusenbery its policy limit of $500,000 plus pre-judgment interest of $164,754.66 and post-judgment interest of $115,890.72. Because United General paid its policy limit, plus an amount that exceeded the interest due on its policy limit as of February 3, 1984, interest no longer accrued to the account of United General after that date.
 
 
 32
 The record reveals that United General did not pay Dusenbery all the post-judgment interest that accrued on the entire judgment from January 30, 1984, until February 3, 1984, as it was required to do. But our concern here is not with whether United General paid its entire post-judgment interest obligation to Dusenbery. The critical fact relevant to Lloyds, London's liability for post-judgment interest after February 3, 1984, is that United General's February 3 payment was equal to its policy limit plus accrued interest on that limit. Lloyds, London does not dispute this fact; consequently interest no longer accrued to the account of the primary carrier, United General, after February 3, 1984. It follows that the district court correctly assessed the $102,123 in post-judgment interest that accrued after February 3, 1984, against Lloyds, London.
 
 III.
 
 33
 We summarize below our disposition on appeal of each item of the district court's judgment.
 
 
 34
 Item 1--We agree with the district court that pre-judgment interest of $41,188.67 should not be a credit against Lloyds, London's policy limit. But we agree with Lloyds, London that it is entitled to credit its policy limits for its payments on the appeal bond. That portion of Lloyds, London's $2,260.28 payment that represents interest from January 30, 1984, through February 3, 1984, also should be credited against its policy limit, but the remainder of this interest should not be a credit against its limit.
 
 
 35
 Item 2--We agree with the district court's determination of this item.
 
 
 36
 Item 3--We agree with the district court that Lloyds, London is indebted for interest on the sum due in item 1 until paid. The interest should be computed on the recalculated balance due on item 1. We agree with the district court's determination of interest due on item 2.
 
 
 37
 REVERSED in part; AFFIRMED in part, and REMANDED.
 
 
 
 [1]
 The breakdown figures for United General and Lloyd's, London are those reported in Defendants' Exhibit # 4. No one has explained why the breakdown figures, when added together, do not equal the total paid. The differences are immaterial, however
 
 
 [2]
 Our references hereinafter to "Burmont/McMoRan" refer collectively to Burmont/McMoRan and its two insurers
 
 
 [3]
 All parties agree that there are no genuine issues of material fact. Thus, our only task is to ensure that the plaintiffs are entitled to judgment as a matter of law
 
 
 [4]
 For some unexplained reason, the three components total $56,664.00, not $56,573.90. The difference of $90.10 is immaterial, however
 
 
 [5]
 7. ULTIMATE NET LOSS--
 The term "Ultimate Net Loss" shall mean the total sum which the Assured, or his Underlying Insurers as scheduled, or both, become obligated to pay by reason of personal injury ... shall also include ... fees, charges and law costs, premiums on attachment or appeal bonds, interest,....
 The Underwriters shall not be liable for expenses as aforesaid when such expenses are included in other valid and collectible insurance. Rec., Vol 1 at 122-23.
 
 
 [6]
 "Legal interest shall attach from date of judicial demand, on all judgments, sounding in damages, 'ex delicto', which may be rendered by any of the courts." La.R.S. 13:4203 (1916)