468 So.2d 833 (1985)
Robert P. ROSE
v.
STATE FARM MUTUAL AUTOMOBILE INS. CO., et al.
No. 84 CA 0266.
Court of Appeal of Louisiana, First Circuit.
April 16, 1985.
Rehearing Denied May 20, 1985.
*835 Thomas H. Watts, Baton Rouge, for plaintiff-appellant, Robert P. Rose.
Carey J. Guglielmo, Baton Rouge, for defendant-appellee State Farm Mut. Auto. Ins. Co., et al.
Before COLE, CARTER and LANIER, JJ.
COLE, Judge.
This is a personal injury action arising out of a vehicular collision. The primary issues on appeal are apportionment of fault and quantum.

FACTS
At approximately 1:15 P.M. on November 29, 1980, plaintiff, Robert P. Rose, was driving his 1979 Dodge van in the center of the three westward lanes of traffic on Interstate 10 in Baton Rouge. Plaintiff was towing a small house trailer. At some point near the Acadian Thruway overpass the van hit a bump and the trailer hitch disconnected. Consequently, the trailer was being pulled only by its safety chains, with the tongue of the trailer striking the pavement causing sparkles. Plaintiff immediately slowed down and came to a gradual halt near the top of the incline.
According to plaintiff, he then turned on his emergency flashers, waited about two minutes until traffic cleared sufficiently and stepped out of the van. Plaintiff stated he observed the left rear light on the trailer flashing at this time. After waving several cars past, plaintiff had his wife pull the van forward slightly to allow the tongue of the trailer to clear the van's bumper. Plaintiff then again went to the rear of the trailer to check traffic. Although traffic was heavy, the center lane was clear as far as plaintiff could see. He went to the front of the trailer, looked back again to check traffic and then stepped between the trailer and the van. However, he was unable to lift the trailer tongue to reconnect it because of the angle of the incline on which the trailer was stopped. Plaintiff estimates he was in this position for approximately seven seconds when the trailer was struck from the rear by a pickup truck driven by Devin Holley. A total period of approximately seven to eight minutes had elapsed since plaintiff stopped his van.
Plaintiff subsequently filed suit against Devin Holley (hereinafter Holley) and his father Michael M. Holley,[1] State Farm Mutual Automobile Insurance Company, liability insurer of the truck driven by Holley, and Treads and Care, Inc., owner of the truck.[2] Following a trial on the merits, the jury found plaintiff's total damages amounted to $47,000.00 and assessed Holley with 20% negligence and plaintiff with 80% negligence. Accordingly, the trial court rendered judgment in favor of plaintiff and against defendants for $9,400.00, 20% of plaintiff's total damages, together with legal interest. Plaintiff was cast for 80% and defendants for 20% of court costs. Plaintiff appeals this judgment.

APPORTIONMENT OF FAULT
La.Civ.Code art. 2323 was amended by Act 431, § 1 of 1979 to permit application of the concept of comparative negligence in those instances where contributory negligence is applicable to a claim for damages. Under this provision an apportionment of fault is made between the plaintiff and defendant and the plaintiff's recovery reduced, rather than defeated, in proportion to his degree of negligence. La.Civ.Code art. 2323 is applicable to the present case. However, plaintiff argues he was not guilty of any negligence and, in the alternative, if so, not in the degree found by the jury. In considering plaintiff's argument, we must examine the actions of each party separately to first determine whether they were negligent and, if so, their comparative percentages of negligence.
*836 We will first examine the conduct of defendant Devin Holley. Holley testified he had been traveling in the center lane for two to three miles prior to the collision. He denies seeing any flashing lights on the trailer. However, he admits not seeing the stopped trailer until he was approximately 25 to 35 yards from it. Although he immediately applied his brakes, he was unable to stop in time to avoid a collision.
On the date of the accident the weather was sunny and clear, with good visibility. Holley does not claim there were any obstructions which prevented his seeing the trailer. Nor does he make any claim he saw the trailer but did not realize it was stopped. Under these circumstances, we find Holley was clearly negligent in failing to maintain the proper lookout required of all motorists.
We now turn to an examination of plaintiff's conduct. Defendants argue plaintiff is responsible for the detachment of the trailer either on the basis of actual negligence or strict liability under Civ.Code art. 2317. However, in this regard we find no evidence of any actual negligence. Plaintiff testified he always checked to ensure everything was connected properly before getting on the road. His wife corroborated this testimony. Additionally, absolutely no evidence was presented to show a specific defect in the trailer hitch. Plaintiff testified he had used the trailer on an extended trip only months before the accident without experiencing any trouble whatsoever. Since the evidence was insufficient to establish the existence of a defect in the trailer hitch, Civ.Code art. 2317 is not applicable to this case as argued by defendants. The cause of the detachment was never adequately established at trial. Certainly, there was no proof the trailer hitch posed an unreasonable risk of injury to anyone or that it caused damage in this instance. See Entrevia v. Hood, 427 So.2d 1146 (La. 1983). We are, therefore, unable to impose legal fault upon plaintiff based upon a defect in the trailer hitch.
Defendants also argue plaintiff should have pulled off the interstate or at least pulled into the right lane. We find no merit in this argument. Plaintiff had little control over the trailer since it was being pulled only by safety chains. Additionally, traffic was heavy. Thus, an attempt to maneuver into another lane would have been extremely dangerous. There was no exit or road shoulder for a considerable distance from the point at which plaintiff stopped. If he had continued further there was a danger the trailer would break loose completely and present an even greater risk to traffic. For these reasons, the action taken by plaintiff in coming to a gradual stop in the center lane was reasonable and prudent.
A motorist disabled on a highway has a statutory duty to remove his vehicle as soon as possible and to protect traffic until that time. La.R.S. 32:141(B). Obviously, these duties must be undertaken in a reasonable manner. However, plaintiff's attempt to rehitch the trailer in order to remove his vehicles was not reasonable. In order to rehitch the trailer it was necessary for plaintiff to place himself between the van and the trailer, which completely blocked his view of approaching traffic. Such a situation is unreasonably dangerous on a multi-lane interstate highway where motorists travel at high speeds, switch lanes frequently and do not normally expect to encounter stopped vehicles. Plaintiff was negligent in undertaking such a course of action, which was below the standard of conduct expected of a reasonably prudent man under like circumstances.
There were alternatives plaintiff could have undertaken which, although still dangerous due to the nature of the situation, would have been more reasonable. He could have attempted to flag down a motorist and either request their assistance or send them for assistance. He could have gone for assistance himself. Although there was no shoulder, there was a raised ledge on the edge of the road wide enough for a person to walk on in an emergency. Additionally, plaintiff or his wife could have carefully and slowly attempted to remove the van and trailer while the other *837 flagged traffic. Instead, plaintiff's wife remained in the van throughout the incident. Also, if plaintiff was to attempt rehitching the trailer, Mrs. Rose could have positioned herself on the above mentioned ledge and acted as a lookout for plaintiff. Plaintiff himself could have directed traffic until the eventual arrival of assistance. Instead, plaintiff attempted to rehitch the trailer without any assistance whatsoever.
Since both drivers were negligent, the next issue presented is the apportionment of fault between them.[3] Holley's fault in failing to maintain a proper lookout and to see plaintiff's trailer until it was too late was much greater than 20%. Conversely, plaintiff's actions, although negligent, were undertaken under difficult conditions and constituted far less than 80% fault. Accordingly, we will raise the percentage of fault attributable to Holley to the lowest degree a reasonable trier of fact could have found and reduce the percentage of fault attributable to plaintiff to the highest degree a reasonable trier of fact could have found. See Efferson v. State of Louisiana, Through the Department of Transportation and Development, 463 So.2d 1342 (La.App. 1st Cir.1984), writs denied, 465 So.2d 722 (La.1985).[4] Under the circumstances present, we find the appropriate apportionment of fault to be 75% to defendant, Devin Holley, and 25% to plaintiff, Robert Rose.
In reapportioning the percentages of negligence, we are not unmindful a persuasive argument could be made the negligence of Devin Holley, in failing to see what he should have seen and to maintain control of his vehicle, was the intervening and superceding cause of the accident, relieving plaintiff of any causative fault on his part. When an accident results from two acts of negligence, one more remote and one an intervening cause, the presence of the intervening cause prevents a finding of liability on the one responsible for the more remote cause. Hessifer v. Southern Equipment, Inc., 416 So.2d 368 (La.App. 1st Cir.1982), writ denied, 420 So.2d 982 (La. 1982); Mizell v. State, through La. Dept. of Hwys., 398 So.2d 1136 (La.App. 1st Cir. 1981).
Additionally, one might argue the very application of the concept of comparative negligence is improper in this instance. By the very language of La.Civ.Code art. 2323, the doctrine is to be used only in those instances where contributory negligence is applicable to a claim for damages. If, as indicated, the negligence of the plaintiff was a remote cause and did not contribute, i.e., was not one of the causative factors in bringing about the accident, art. 2323 should be of no concern in resolving the rights of the parties.
Pretermitting the above considerations, our review of fault apportionment is consistent with the guidelines of Higgins v. Johnson, 349 So.2d 918 (La.App. 1st Cir. 1977), writs denied, 351 So.2d 161, 162 (La.1977), and Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975). In those cases, as here, the trial judge failed to give a proper charge relative to a motorist's duty to look ahead and see what he can see and in legal contemplation does see. It is obvious the defendant in this case was negligent in not seeing what he should have seen.
The jury in this case lacked a specific and vital instruction as to defendant's duty that was essential for the jury to properly assess defendant's fault. It was *838 error to omit the instruction. When a jury charge is improper or lacking, Higgins and Gonzales hold that the proper remedy is for the appellate court to render a judgment on the merits. The appellate court, for all practical purposes, must conduct a trial de novo and reach its own factual determination. This we have done. See also, Thomas, et al. v. Missouri Pacific Railroad Company, et al., 466 So.2d 1280 (La.1985), and the cases cited therein.

QUANTUM
Plaintiff alleges the amount of damages fixed by the jury was grossly inadequate. The jury concluded plaintiff suffered total damages, general and special, of $47,000.00. A trial court's award of damages may be disturbed on appeal only when the record clearly reveals an abuse of the great discretion afforded the trier of fact in making the award. Reck v. Stevens, 373 So.2d 498 (La.1979). Upon such a finding, the appellate court can then raise (or lower) the award to the highest (or lowest) amount which is reasonable within the discretion afforded the trier of fact. Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1976). Based on the facts established at trial, we conclude the amount of damages fixed by the jury in the present case was so inadequate as to constitute an abuse of discretion.

GENERAL DAMAGES
The primary personal injuries suffered by plaintiff were a compound fracture of his left tibia and a laceration to his chin requiring 17 stitches. He remained hospitalized for nine days following the accident. On the day of the accident his left leg was placed in a cast and pins inserted to hold it in place. These pins were not removed for approximately four weeks.
Following his release from the hospital, plaintiff's leg did not heal properly. His physician prescribed the use of a bioelectrical stimulation device to aid healing. Use of this device required plaintiff to be hooked up to the bioelectrical stimulation unit for prolonged periods of time. Although some progress was noted, satisfactory healing of plaintiff's leg still had not occurred after use of this device for one and a half years. Thus, in November of 1982, bone graft surgery involving the insertion of a permanent six inch plate and several screws was performed. Plaintiff was hospitalized for 12 days on this occasion. The surgery was successful and he was ultimately released from his physician's care on July 21, 1983.
Throughout most of his recovery, a period in excess of two and one-half years, plaintiff was required to wear casts on his leg and use crutches. He was unable to return to work and was compelled to take a disability retirement in July of 1981. Plaintiff stated he presently has limited endurance in his left leg and can stand on it for only a couple of hours at a time.
The medical evidence presented at trial establishes plaintiff will have permanent residual disability. The estimates presented range from 5% or less to 20%, with his treating physician assigning a 10% disability.
In addition, the medical testimony establishes plaintiff had a pre-existing arthritic condition which was aggravated by his injury and unusually long recovery period. Although plaintiff first complained of pain in his right knee in August of 1982, by the time of trial in October of 1983 this arthritic condition was severe, with little likelihood of improvement.
In view of these considerations we find $30,000.00 to be the lowest amount the jury could reasonably have awarded for general damages.

SPECIAL DAMAGES
At the time of his injury plaintiff was employed as a head fireman for Gulf States Utilities earning $486.59 per week.[5] Although he was unable to work, Gulf States continued to pay his full salary until August *839 1, 1981. Since plaintiff was unable to return to work on that date, he was compelled to take a disability retirement paying benefits of $590.81 per month. The earliest age at which Gulf States permits regular retirement, without any reduction of benefits, is 62. Plaintiff was 59 at the time of the accident.
Dr. George Rice, a professor of economics at Louisiana State University, testified on plaintiff's behalf as to his economic losses. Defendant stipulated to Dr. Rice's expertise in economics and the court accepted him as such.
Plaintiff suffered a substantial loss of wages due to his inability to return to work following the accident. We conclude the shortest period upon which an award of lost wages could reasonably be based was from August 1, 1981, the date payment of his full salary was discontinued, to July 16, 1983, the date he would otherwise have been eligible for regular retirement. Dr. Rice calculated plaintiff's lost income for this period was $39,606.00, after deduction of disability benefits paid to him. We have reviewed these calculations and find no error. Thus, $39,606.00 was the lowest amount the jury could reasonably have awarded for this item of damages.[6]
In addition, plaintiff incurred $15,255.00 in medical expenses and $175.00 in ambulance and towing expenses.

DECREE
For the above reasons, the judgment of the trial court is amended to: (1) apportion negligence at 75% to defendant Devin Holley and 25% to plaintiff Robert Rose; (2) increase plaintiff's award to $63,777.04 ($85,036.05, less 25%), together with legal interest thereon from date of judicial demand until paid; and, 3) to assess trial court costs at 75% to defendants and 25% to plaintiff. Costs of appeal are also assessed 75% to defendants and 25% to plaintiff.
AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] Devin Holley was a minor on the date of the accident, but by the time of trial had obtained the age of majority.
[2] Treads and Care, Inc. was dismissed from the suit on a motion for directed verdict.
[3] In examining the special jury interrogatories we note the jury found the fault of which Holley was guilty was not a proximate cause of the accident. Despite this conclusion, the jury found Holley's proportionate negligence was 20% and awarded damages to plaintiff. On appeal neither party has raised an issue on this point. Nevertheless, the entire record is before us and it is our duty to render a proper judgment. La.Code Civ.P. art. 2164; Andrepont v. Naquin, 345 So.2d 1216, 1221 (La.App. 1st Cir. 1977). Insofar as any inconsistency exists the jury was clearly wrong in concluding Holley's actions were not a proximate cause of the accident.
[4] No. CA 83 1155; rendered November 29, 1984; writs denied March 7, 1985, Nos. 85-C-0087 and 85-C-0155.
[5] The base salary of a head fireman was subsequently raised several times. These raises were taken into consideration in calculating plaintiff's lost wages.
[6] Plaintiff assigned as error the trial court's refusal to instruct the jury an award of lost wages should be based on gross rather than net earnings. This issue is rendered moot by the award for lost wages made herein, since this award is based on plaintiff's gross wages. Black v. Ebasco Services, Inc., 411 So.2d 1159 (La.App. 1st Cir.1982), writ denied, 414 So.2d 1253 (La.1982); Reeves v. Louisiana and Arkansas Railway Co., 304 So.2d 370, 377 (La.App. 1st Cir.1974), writ denied, 305 So.2d 123 (La.1974).