471 So.2d 1099 (1985)
Ronald K. TISCHLER, Plaintiff-Appellant,
v.
CITY OF ALEXANDRIA, et al., Defendant-Appellee.
No. 84-517.
Court of Appeal of Louisiana, Third Circuit.
June 26, 1985.
*1101 David A. Sheffield, Alexandria, for plaintiff-appellant.
Gist, Methvin, Hughes & Munsterman, David A. Hughes, Alexandria, for defendant-appellee.
Before GUIDRY, KNOLL and KING, JJ.
KNOLL, Judge.
This tort suit arises out of a single vehicular accident in which a motor home, owned and driven by Dr. Ronald K. Tischler, ran off the roadway, traveled a short distance on the shoulder, struck a city utility pole, and went into a ditch on the opposite side of the road. Dr. Tischler brought this action against the City of Alexandria (City) and its insurer, Home Insurance Company, seeking $10,000 for personal injury and property damage. The City reconvened seeking $406.15, the cost of replacing the utility pole. The City's insurer was subsequently dismissed from this suit. The trial court found both the City and Dr. Tischler negligent, apportioning the City's fault at 25% and Dr. Tischler's fault at 75%; therefore, Dr. Tischler's $8000 award ($7000 for property damage and $1000 for personal injury) was reduced to $2000. On the reconventional demand, the court entered judgment in favor of the City. Dr. Tischler appeals, contending the trial court erred: (1) in finding him 75% at fault; (2) in finding him liable for repairs to the damaged utility pole; and (3) in awarding $1000 for his pain and suffering. The City answered the appeal, contending that Dr. Tischler's negligence was the sole cause of the accident. We affirm in part and reverse in part.

FACTS
On November 26, 1980, at approximately 3:00 a.m., Dr. Tischler was test driving his newly repaired motor home on Horseshoe Drive in Alexandria. The roadway is a two-laned narrow winding asphalt road with very narrow shoulders and large ditches on both sides.
While Dr. Tischler was test driving his motor home, it began raining. As he approached his home on Horseshoe Drive, traveling in a southerly direction, the bright lights of an oncoming vehicle, together with the rain, obstructed his view; therefore, he steered his motor home to the right. The right rear dual wheels left the asphalt roadway surface dropping onto the right shoulder. The shoulder was approximately 6-8 inches lower than the roadway. Dr. Tischler slowed to attempt a gradual reentry onto the roadway, however, because of the severe drop-off, before he could reenter, the right rear bumper of the vehicle struck a city utility pole located in the shoulder and 41 inches from the edge of the roadway. The motor home then spun around and came to rest in the ditch on the opposite side of the road. The accident occurred approximately 200 feet from the driveway of Dr. Tischler's home, where he has resided since 1967. The parties stipulated that Dr. Tischler's property loss *1102 amounted to $7000. Dr. Tischler injured his knee, but treated it himself since he is a physician.
Dr. Tischler later received a letter from the City billing him for $406.13, the cost of replacing the utility pole. He called the City to discuss payment in installments rather than a lump sum. The City agreed to accept $50 installments. Dr. Tischler then sent a $50 check payable to the City, noting that it was partial payment for damages to the utility pole. The trial court found that Dr. Tischler thus contractually obligated himself to pay the City for damages to the utility pole, and that this agreement was independent of the tort action.

STRICT LIABILITY UNDER C.C. ART. 2317
Dr. Tischler argues that the City is liable under C.C. Art. 2315, general negligence, or under the theory of strict liability, C.C. Art. 2317. The City contends that it was not guilty of any negligence since Dr. Tischler knew that Horseshoe Drive is not provided with shoulders. After a careful review of the record, we find that the City is liable under Article 2317, strict liability.
In the trial judge's written reasons for judgment, he stated:

"Viewing all the evidence as a whole, the Court concludes that the almost complete absence of a shoulder with the utility pole only 40 inches from the edge of the highway, and all of this in a curve, had to be known by the appropriate officials of the City of Alexandria, and thus the defendant is negligent in failing to take appropriate steps to ameliorate the situation, if nothing else by installing some florescent or other highly reflective warning device to more prominently enhance the presence of the utility pole to passing motorists, and that such negligence was a proximate cause of the accident complained of herein." (Emphasis added.)

LSA-C.C. Art. 2317 provides in pertinent part:
"We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody...."
The Louisiana Supreme Court described the legal foundation for imposing liability under Article 2317 in Loescher v. Parr, 324 So.2d 441 (La.1975), as follows:
"When harm results from the conduct or defect of a person or thing which creates an unreasonable risk of harm to others, a person legally responsible under these code articles for the supervision, care, or guardianship of the person or thing may be held liable for the damage thus caused, despite the fact that no personal negligent act or inattention on the former's part is proved. The liability arises from his legal relationship to the person or thing whose conduct or defect creates an unreasonable risk of injuries to others."
Therefore, the issue is whether the City created unreasonable risk of injuries to others by allowing a severe drop-off between the roadway and shoulder, and in placing the utility pole 41 inches from the edge of the roadway in the shoulder at the apex of the curve.
Public bodies may be held liable under Article 2317 for damages caused by defective things in their custody. Jones v. City of Baton Rouge, Etc., 388 So.2d 737 (La.1980). Legal fault under Article 2317 does not require a showing of the public body's knowledge (constructive or actual) of the existence of a danger, but rather is a consequence of ownership and custody instead of a breach of duty. Shipp v. City of Alexandria, 395 So.2d 727 (La.1981); Tappel v. Vidros, 407 So.2d 789 (La.App. 4th Cir.1981).
To establish liability under Article 2317, a plaintiff has the burden of proving three facts. First, the property which caused the plaintiff's damage was in the custody of the defendant. Second, the property which caused plaintiff's damage was defective. Third, the damages incurred *1103 by plaintiff were caused by the defective thing. McSweeney v. Dept. of Transp. & Development, 442 So.2d 659 (La.App. 1st Cir.1983); Loescher v. Parr, supra. Once these elements are proven, the custodian can escape liability only by showing that the harm was caused by the fault of the victim, by the fault of a third person, or by an irresistable force. Shipp v. City of Alexandria, supra; Jones v. City of Baton Rouge, supra; Loescher v. Parr, supra.
In the instant case, Dr. Tischler contends the elements of strict liability under Article 2317 are satisfied in that: (1) the highway, shoulder, and utility pole at issue were property in the care and custody of the City; (2) the location of the utility pole was a defect which existed at the time of the accident; (3) the defect created an unreasonable risk of injury to the motoring public; and (4) the defect caused his damages. We agree. The photographs vividly demonstrate the hazardous location of this particular utility pole that created unreasonable risk of injuries to others. The other utility poles in the vicinity were located 7 feet from the roadway. There is no explanation in the record of any factor that would have prevented the City from placing this particular utility pole at a farther distance from the roadway. The evidence firmly establishes that it was the drop-off in the immediate area coupled with the proximity of the utility pole which rendered the shoulder defective.
We have considered victim fault and find Dr. Tischler free from fault. We find that the drop-off in the immediate area coupled with the location of the utility pole in question which created such a hazardous condition that familiarity with the roadway would not affect liability. Dr. Tischler operated his vehicle as a prudent driver by attempting a controlled gradual reentry. Pitre v. Aetna Ins. Co., Inc., 456 So.2d 626 (La.1984). The location of the utility pole was the sole reason why Dr. Tischler was unable to complete reentry onto the roadway. Under these circumstances, we cannot say that Dr. Tischler was at fault. There is no evidence of fault of a third party or an irresistable force, therefore, the City cannot escape liability under Article 2317.

DAMAGE TO UTILITY POLE
A person who has paid money to another by mistake, thinking he owed a debt, may reclaim what he has paid. LSA-C.C. Art. 2302; Acme Refrig. of Baton Rouge v. Caljoan, Inc., 346 So.2d 743 (La. App. 1st Cir.1977). A person who receives what is not due to him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he has unduly received it. LSA-C.C. Art. 2301. A thing not due is that which is paid on the supposition of an obligation which did not exist. LSA-C.C. Art. 2304. Negligence per se is not a bar to recovery for payment of a thing not due. Williams v. Bank of Louisiana in New Orleans, 454 So.2d 1138 (La.App. 4th Cir.1984), writ denied, 460 So.2d 611 (La.1984).
Dr. Tischler contends the trial court manifestly erred in finding him liable for repairs to the damaged utility pole because he made the payment in error, being unaware that the City's negligence was the proximate cause of the accident and the resulting damage to its utility pole. We agree. Since Dr. Tischler is free of fault, he is not responsible for the cost of repairing the damaged utility pole.
The City contends that Dr. Tischler's check was evidence of a contract confirming his agreement to reimburse the City. We find Dr. Tischler's check represents partial payment of an obligation which clearly does not exist. We, therefore, dismiss the City's reconventional demand.

PAIN AND SUFFERING AWARD
Dr. Tischler contends that the trial court committed manifest error in awarding $1000 for pain and suffering when other courts awarded a minimum of $2000 for similar injuries. Before an appellate court can disturb an award made by a trial court the record must clearly reveal *1104 that the trier of fact abused its great discretion in making its award. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). In view of the fact that Dr. Tischler's injury was very minor and he was able to treat it himself, we cannot conclude that the trial court clearly abused its discretion.

DECREE
For the foregoing reasons, the judgment of the trial court is reversed insofar as it finds Dr. Tischler at fault and finds him liable for damages to the utility pole. In all other respects, the trial court's judgment is affirmed. Judgment is hereby ordered in favor of the appellant, Dr. Ronald K. Tischler, and against the City of Alexandria in the amount of $8000 ($7000 stipulated property damage and $1000 pain and suffering) together with legal interest from the date of judicial demand until paid. The City's reconventional demand is hereby dismissed. Costs of this appeal are assessed against the City of Alexandria insofar as permitted by LSA-R.S. 13:4521.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.