Gus BUTLER, Jr.

v.

INTERSOUTH PIPELINE, et al.

No. 83–458–A.

United States District Court,
M.D. Louisiana.

Oct. 1, 1986.

Arthur Cobb, Arthur Cobb Ltd., Baton Rouge, La., for plaintiff.

Calvin E. Hardin, Jr., Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, La., for intervenor.

Peter T. Dazzio, Watson, Blanche, Wilson & Posner, Baton Rouge, La., for defendants.

JOHN V. PARKER, Chief Judge.

This matter is before the court on the motion of third-party defendants, Donald Bourg, Gordon Schexnader, South Central Insurance Company, and International Fire Casualty and Insurance Company (the Bourg defendants), for summary judgment seeking dismissal of claims by the third-party plaintiffs, Intersouth Pipeline Contractors, Inc., Ranger Insurance Co., and Paul Spurlin (the Intersouth defendants), of contribution and indemnity. The Bourg defendants except International, the excess insurer, have settled with the plaintiff and argue that the settlement precludes any potential liability by them to the Intersouth defendants. The plaintiff's complaint alleges diversity of citizenship as subject matter jurisdiction.

Plaintiff Butler was driving his car when he was struck by a bulldozer blade protruding from a moving flatbed trailer. Plaintiff sued the Intersouth defendants, including the owner of the bulldozer and the employee who allegedly loaded the bulldoz-

er on the flatbed trailer for transportation. The Intersouth defendants now seek contribution and indemnity from the Bourg defendants, who owned and operated the flatbed truck trailer used for transporting the bulldozer. The settlement agreement between the plaintiff and the Bourg defendants did not release the excess insurer, International. The agreement, after releasing Bourg, Schexnader, and South Central by name, provides for a reservation of rights against all others, including the Intersouth defendants.

Plaintiff alleges that Intersouth obtained an 11 foot—10 inch wide-load permit to transport the bulldozer (which had a 13 foot—8 inch blade) along a road having lanes 10 feet wide. It is further alleged that Intersouth loaded the bulldozer on the flatbed trailer in such a way that the bulldozer blade extended into the opposing lane of traffic. Plaintiff's vehicle hit the protruding blade as he attempted to drive down his own side of the road. Plaintiff also alleges that defendant Intersouth did not arrange for a wide-load escort for the truck.

The Intersouth defendants allege that plaintiff's injuries were caused by his own negligence and fault. Alternatively, they contend that the bulldozer and tractor-trailer in question were under the control and supervision of the Bourg employee who negligently operated the tractor-trailer and transported the bulldozer.

Since the excess carrier was not named in the release, it falls under the reservation of rights "against all others" and it has not been released. *Futch v. Fidelity & Casualty Co.*, 246 La. 688, 166 So.2d 274 (1964); *Gasquet v. Commercial Union Insurance Co.*, 391 So.2d 466 (La.App. 4th Cir.1980); *Wirick v. Wyble*, 300 So.2d 571 (La.App. 3d Cir.1974). Accordingly, to the extent that any judgment which might be rendered exceeds the policy limits of the primary carrier, International must remain as a third party defendant.

### CONTRIBUTION

The remaining Bourg defendants rely on *Garrett v. Safeco Ins. Co.*, 433 So.2d 209 (La.App. 2d Cir.1983) for the proposition that the Intersouth defendants have no claim to contribution. When the plaintiff settled with one group of alleged joint tortfeasors (solidary obligors), the non-settling defendants lost their right of contribution against the settling defendants. Although they have no right to contribution, the Intersouth defendants may show at trial the fault of the released defendants and accordingly claim a reduction in judgment by that percentage of fault. See *Diggs v. Hood*, 772 F.2d 190 (5th Cir. 1985); *A.O. Smith-Inland Inc. v. Union Carbide Corp.*, 547 F.Supp. 344 (M.D.La. 1982), aff'd 703 F.2d 555 (5th Cir.1983).

### INDEMNIFICATION

Counsel for plaintiff has sent word to the court that he has no interest in the outcome of this motion. The court suggests that counsel may want to re-think the problem. In addition to claims of negligence against the Intersouth defendants, plaintiff also claims strict liability under article 2317 of the Louisiana Civil Code, alleging that Intersouth had custody of a defective thing (bulldozer) which caused him harm. The settlement agreement entered into between plaintiff and the Bourg defendants contains a provision under which plaintiff agrees to hold the Bourg defendants harmless from any claims which may be asserted against them by the Intersouth defendants. As we will see, if plaintiff is successful on his strict liability claims against the Intersouth defendants they will, indeed, have a valid indemnity claim against the Bourg defendants, who, in turn, will have a hold harmless claim against plaintiff. Plaintiff thus will pay his own judgment if he wins.

In seeking a motion for summary judgment declaring no right to indemnity, the Bourg defendants predominantly rely on the following premises:

(1) The holding of *Garrett v. Safeco*, 433 So.2d 209 (La.App. 2d Cir.1983), precludes the indemnification claim.

(2) Legal subrogation is necessary to support an indemnification claim.

*Garrett*, supra, does not address indemnification. Accordingly, that decision pro-

vides no legal basis upon which to dismiss the indemnification claim.

■ In their memorandum, the Bourg defendants appear to reach the conclusion that legal subrogation is necessary to support an indemnification claim by assuming that contribution and indemnity are based on the same legal principles and sources. Unlike contribution, the right to indemnification is not based on the right of subrogation to the creditor's claim. The right to indemnification is based on the legal concepts of restitution and unjust enrichment. In *Ducre v. Executive Officers of Halter Marine, Inc.*, 752 F.2d 976 (5th Cir.1985), the court analyzed the Louisiana law of indemnity. "As in the contractual indemnity action, notions of unjust enrichment and of injury to the indemnitee (in the form of an obligation to pay a judgment to the original plaintiff) by the fault of the indemnitor (whose negligence actually injured the original plaintiff) provide a theoretical foundation for the tort indemnity action." Id. at 985–986. Further, the court noted:

> The Louisiana Supreme Court has written that the civil law basis of the indemnity remedy, at least for the purposes of prescription, is the principle that "forbids enrichment (of one) at the expense of another." *Minyard v. Curtis Products, Inc.*, 251 La. 624, 205 So.2d 422, 432 (1967).
>
> See also, *Truxillo*, 225 So.2d [488] at 495 [ (La.App.1969) ] where the court, citing Minyard, wrote that whether one tortfeasor's fault is active and that of the other merely constructive, depends upon "whether some basis exists to conclude that treating both codebtors as equally responsible ... would constitute an *unjust* enrichment of one at the expense of the other." (emphasis in original). *Ducre*, 752 F.2d at 985 n. 21.

Article 2106 of the Louisiana Civil Code provides:

> If the affair for which the debt has been contracted in solido, concern only one of the co-obligors in solido, that one is liable for the whole debt towards the other codebtors, who, with regard to him, are considered only as his securities.

Although LSA–C.C. art. 2106 uses the word "contracted," the courts have not limited the article to contractual indemnity. The Louisiana jurisprudence indicates article 2106 is the basis for delictual indemnification as well. In 1984 the legislature amended the obligations articles, effective Jan. 1, 1985. The substantive law found in article 2106 is now restated in new article 1804, "If the circumstances giving rise to the solidary obligation concern only one of the obligors, that obligor is liable for the whole to the other obligors who are then considered only as his sureties."

The Comment to the new article 1804 indicates that this article does not change the law. Article 1804 does not contain the contractual language of its predecessor, article 2106. Thus, the new article, although not governing law in this case, appears to clarify the law and indicates that in Louisiana there is a statutory basis (LSA–C.C. art. 2106—now LSA C.C. art. 1804) for both contractual and delictual indemnification.

■ Although some Louisiana cases have talked in terms of "active-passive" negligence in indemnity claims between joint tortfeasors, analysis of the jurisprudence shows that indemnity is actually granted upon the absence of fault by one joint tortfeasor who is vicariously liable for the act of another (parent-child, employer-employee, etc.) or because of his legal relationship with the thing causing harm (custody of defective thing, art. 2317; owner of building, art. 2322). One who is himself guilty of fault (negligence) is never entitled to indemnity. As stated In *Diggs v. Hood*, 772 F.2d 190 (5th Cir.1985):

> Indemnity is due when fairness requires that one person bear the total responsibility for an injury. The basis for indemnity in the civil law, as in the common law, is restitution, the indemnitor having been unjustly enriched when the person seeking indemnity has discharged liability that was his responsibility. Id. at 193.

The most recent Louisiana Supreme Court case specifically addressing indemnification in Louisiana is *Dusenberry v.*

*McMoran Exploration Company,* 458 So.2d 102 (La.1984). In that case an oil field worker was killed in an oil well pressure explosion. His survivors brought a wrongful death action against the owners of the well under Louisiana strict liability theories of recovery.

The defendant owners of the well, McMoran/Burmont, filed a third party demand for indemnification against Hart, the oil field contractor whose employees negligently welded a nipple in the well's pressure system which was lighter than the nipple required by the specifications.

The trial court found that Hart and McMoran/Burmont were solidarily liable to plaintiffs, Hart on the basis of negligence and McMoran/Burmont on the basis of strict liability. Because the liability of each defendant was founded on separate legal bases, the court refused McMoran/Burmont's demand for indemnity against Hart. The court affirmed, reasoning that McMoran/Burmont was not entitled to indemnity because its liability was not vicarious.

The Louisiana Supreme Court reversed, holding that, "McMoran/Burmont, although solidarialy liable to plaintiff as owner of the well which contained an unreasonably dangerous condition, is entitled to indemnity against Hart, who created the unreasonably dangerous condition, which McMoran/Burmont could not detect by visual inspection and of which McMoran/Burmont had no actual knowledge." 458 So.2d at 104.

*Dusenberry* specifically states that a claim of indemnity may be available to parties held strictly liable. "The Court of Appeal erred in restricting indemnity to cases of vicarious liability. Indemnity is available in some (but not all) cases of strict liability. To determine the availability of indemnity, it is necessary to examine the basis for imposition of strict liability in the particular case." Id. at 104.

The court further noted:

The indemnification claim is based not on the relationship between the owner of the structure and the injured party, but upon the relationship between the owner and the party who actually created the dangerous condition in the structure. When liability *to the injured party* is imposed on one party on the basis of strict liability only and on a second party on the basis of negligence or actual fault, the strict liability defendant may recover full indemnity by incidental demand against the party actually at fault. *Appalachian Corp. v. Brooklyn Cooperage Co.,* 151 La. 41, 91 So. 539 (1922) ...

This is not to say that indemnity is available in every case in which there is one strict liability defendant and one negligent defendant. Indemnity is available only when, as in the present case, the strict liability defendant is liable to the injured party on the basis of responsibility, imposed without proof of negligence, for an unreasonably dangerous condition which the negligent defendant actually created and which the strict liability defendant neither concurrently caused nor had an opportunity to actually discover and remedy. (Emphasis in original) *Dusenberry,* 458 So.2d at 105 and at 105 n. 3.

The court emphasized that the strict liability defendant must be free of negligence/fault in order to claim indemnification.

While both defendants are liable to the injured party, the defendant who is liable *only* as the owner of the unreasonably dangerous structure should be made whole by the defendant who actually caused the unreasonably dangerous condition for which the owner is strictly liable ... The defendant whose actual fault has been proved by the claimant on the principal demand may prevail on the strict liability defendant's incidental demand for indemnification only by proving affirmatively that the strict liability defendant was guilty of concurrent fault. *Dusenberry,* 458 So.2d at 105.

Applying these principles to the case before this court, it appears that the Intersouth defendants may seek indemnity from the Bourg defendants *only if*

(1) the Intersouth defendants were not negligent and

(2) the Intersouth defendants are strictly liable under 2317.

Without evaluating the chance that the jury would find the Intersouth defendants free of negligence, they can claim indemnity only if the plaintiff has a viable 2317 claim. The pleadings and undisputed facts indicate that as a matter of law, plaintiff has no 2317 claim.

## REQUIREMENTS OF A C.C. 2317 CAUSE OF ACTION

In *Shipp v. City of Alexandria*, 395 So.2d 727, 728 (La.1981), the court summarized the requirements of liability under art. 2317.

An injured party seeking damages under art. 2317 need not prove negligence, that is, that any particular act or omission on the part of the defendant caused his injuries. He must only prove that the thing which caused the damage was in the care or custody of the defendant, that the thing had a vice or defect, that is, that it occasioned an unreasonable risk of injury to another, and that his injury was caused by the defect. Once these elements are proven, the custodian can escape liability only by showing that the harm was caused by the fault of the victim, by the fault of a third person, or by an irresistible force. (Citations omitted).

*Shipp* indicates that article 2317 has three requirements—custody, defect, causation. See also *Tischler v. City of Alexandria*, 471 So.2d 1099, 1102–03 (La.App. 3d Cir. 1985).

In *Entrevia v. Hood*, 427 So.2d 1146 (La.1983), the court focused on one of the three requirements of 2317 liability—what makes a thing defective. There court in appeared to make two inquiries to determine whether an article 2317 "defect" exists.

(1) Is there a vice or defect in the thing? E.g. structural defects—rotten tree, car with faulty brakes, highway with potholes; design defects—an escalator designed in such a manner that it has a propensity for trapping small (children's) tennis shoes.

(2) If there is such a defect, does it pose an "unreasonable risk of harm to another?"

The court explained this second inquiry.

The unreasonable risk of harm criterion, however, is not a simple rule of law which may be applied mechanically to the facts of a case. It is a concept employed by this court to symbolize the judicial process required by the Civil Code. Since articles 2317 and 2322 state general precepts and not detailed rules for all concrete cases, it becomes the interpreter's duty to decide which risks are encompassed by the codal obligations from the standpoint of justice and social utility....

The judicial process involved in deciding whether a risk is unreasonable under article 2317 is similar to that employed in determining whether a risk is unreasonable in a traditional negligence problem, *Hunt v. City Stores, Inc.*, 387 So.2d 585, (La.1980) and in deciding the scope of duty or legal cause under the duty/risk analysis. *Hill v. Ludin Associates, Inc.*, 260 La. 542, 256 So.2d 620 (1972); Green, The Causal Relation Issue, 60 Mich.L. Rev. 543, 563 (1962). This is not because strict liability under article 2317 is equivalent to liability for negligence, but because in both delictual areas the judge is called upon to decide questions of social utility that require him to consider the particular case in terms of moral, social and economic considerations, ...

*Entrevia*, 427 So.2d at 1149–50.

To understand the application of the "unreasonable risk of harm criterion" it is helpful to look at the court's application of this criterion to the facts before it in *Entrevia*. That case involved a vacant house located on a remote piece of rural property surrounded by a fence posted with "no trespassing" signs. The plaintiff entered the premises (without the knowledge or consent of the owner) to peer through the windows of the house. Plaintiff was seriously injured when the rear steps to the house collapsed as she descended. The court, considering strict liability under 2317 and 2322, recognized that the steps were

defective, but found that "in light of all relevant moral, economic and social considerations the defective steps did not pose an unreasonable risk of harm to others." Id. at 1147.

The court used the weighing process traditionally used in determining liability based on negligence, and found that under the circumstances of the case, this defendant should not be held strictly liable to this plaintiff—in spite of the defendant's custody of a defective thing (stairs/building) which caused injury. Justice Lemmon who subscribed to the decision and assigned additional concurring reasons, stated: "This decision reinforces the concept that the judicial determination of strict liability under article 2317 does not end with the conclusion that the thing in defendant's custody caused the injury, but further requires a weighing process." Id. at 1151.

Study of *Shipp* and *Entrevia*, supra, indicates that a thorough analysis of the three requirements of an article 2317 claim (custody, defect, causation), involves four inquiries.

(1) Was the thing which caused the plaintiff's damage in the custody of the defendant?

(2) Was the thing which caused the plaintiff's damage defective? (structure or design)

(3) "The unreasonable risk of harm criterion"—Did the defective thing cause an unreasonable risk of harm to the plaintiff? (Risk versus social utility balancing process—essentially a proximate cause type inquiry, i.e., should this defendant, be liable to this plaintiff, for this harm, caused in this manner?).

(4) Was the damage incurred by the plaintiff caused by the defective thing?

Inquiries (2) and (3) are frequently treated as a single inquiry i.e. "is there a vice or defect?" *Goudchaux v. State Farm Fire & Cas. Co.*, 407 So.2d 1317, 1320 (La.App. 3d Cir.1981), writ denied, 412 So.2d 1114.

### DOES PLAINTIFF BUTLER HAVE A C.C. 2317 CLAIM?

Plaintiff's complaint and the facts alleged raise at least two article 2317 issues.

First, was the bulldozer a defective a thing? Second, if the bulldozer was defective who had custody of the defective equipment—the Intersouth defendants, who owned the bulldozer and loaded it on the trailer, or the Bourg defendants, who were physically transporting the equipment at the time of the accident?

■ Plaintiff does not allege that the bulldozer owned by the Intersouth defendants was defective. Plaintiff instead alleges that the defect was "the unreasonable risk of injury created by transporting the bulldozer in the manner in which it was being transported (defect)." (Plaintiff's Pretrial Brief, p. 2). Plaintiff is obscuring the requirements of a 2317 claim. Although the unreasonable risk of harm criterion of *Entrevia* must be satisifed, article 2317, still requires that there be an actual defect in the thing causing injury. In *Entrevia* the steps of the vacant house were found to be defective (in that they gave way when stepped on), but they were not unreasonably dangerous (i.e. as a matter of policy there was no 2317 liability). Plaintiff Butler fails to allege any structural—substantive defect in the bulldozer—the thing which apparently caused the plaintiff's harm. Plaintiff cites *Rozell v. Louisiana Animal Breeder's Coop.*, 434 So.2d 404 (La.1983) and *Guillot v. Fisherman's Paradise, Inc.*, 437 So.2d 840 (La.1983), as support for his 2317 theory of liability. These cases do not address 2317 liability *at all*. *Rozell* discussed the strict liability of the owner of an animal (there a bull) under C.C. 2321. *Guillot* is an attrative nuisance—negligence case which never mentions C.C. 2317.

Plaintiff's 2317 claim appears to bottom on the premise that because there was an accident there must have been a defect. The undisputed facts here compel the conclusion that the accident was caused, not by a defect in the bulldozer, but by the negligence of those loading and/or transporting the equipment.

In *Goudchaux v. State Farm Fire and Casualty Co.*, 407 So.2d 1317 (La.App. 3d Cir.1981), writ denied, 412 So.2d 1114, the plaintiff was helping the defendant clean

the defendant's home sewer line with an auger. The plaintiff was operating the device when the cutting head of the machine struck a solid object causing the steel cable to twist violently. In doing so, it injured the plaintiff's hand. The plaintiff sued the defendant under LSA–C.C. arts. 2317 and 2322. The court observed in a footnote:

> We also agree with the trial court's finding that plaintiff failed to prove the existence of any defect in the sewer auger. The only evidence offered by plaintiff on this issue was the showing that he had been injured by the machine. As we noted in *Shipp v. City of Alexandria,* infra, the mere fact that one is injured by a thing does not elevate the condition of that thing to that of an unreasonably dangerous vice or defect. See also *Broussard v. Pennsylvania Millers Mutual Ins. Co.,* 406 So.2d 574 (La.1981).
>
> *Goudchaux,* 407 So.2d at 1320, n. 2.

In *Broussard v. Pennsylvania Millers Mutual Ins. Co.,* 406 So.2d 574 (La.1981), an article 2317 action was brought against the owners of an aquarium for injuries a child sustained when the aquarium's stand turned over causing the aquarium to fall on the child. The plaintiff contended that a defect must be presumed from the fact of the accident. The court said there was no defect—hence no 2317 liability.

> Plaintiffs contend that a defect must be presumed from the fact of the accident. It is argued that the toppling of the aquarium stand was "an unusual occurrence" which would have happened if the item had not been defective. *Marquez v. City Stores Co.,* 371 So.2d 810 at 813 (La.1979).... A defect cannot be inferred solely from the fact that the accident occurred.
>
> *Broussard,* 406 So.2d at 576.

*Gasquet v. Commercial Union Ins. Co.,* 391 So.2d 466 (La.App. 4th Cir.1980), writ refused, 396 So.2d 921, involved an accident which occurred when an airboat in which the plaintiff was a passenger came to a sudden stop as it hit a sandbar resulting in severe injuries to the plaintiff. The court affirmed the trial judge's refusal to instruct the jury on 2317 strict liability be-

cause the facts of the case indicated that the plaintiff's injury was not caused by the instrumentality (airboat). The court noted, "We do not dispute that an airboat is a potentially dangerous instrumentality; however, in the instant case the instrument was at all times in control of the operator, Boudreaux, whose negligent handling of the airboat caused the accident." Id. at 473.

Running a normal airboat into a sandbar is negligent operation, not a defect in the boat.

The plaintiff's allegations here indicate that the cause of the accident was not a defective instrumentality, but the negligence of the parties loading and/or transporting the bulldozer, just as in *Gasquet,* the negligence of the driver of the airboat caused the injury. The *Gasquet* case illustrates that negligent use of a nondefective thing is not a basis for article 2317 liability.

*Kinchen v. Missouri Pacific R. Co.,* 678 F.2d 619 (5th Cir.1982), involved a truck-train collision. The plaintiff alleged that the train was not properly equipped with warning lights required by the railroad operating rules. The Court of Appeals cited *Gasquet* and found no 2317 claim.

> [T]he plaintiff concludes that the defendant's train simply was not properly equipped to carry out its function, thereby giving rise to an article 2317 claim. We disagree with this contention. First, we do not conclude as the plaintiff does that even if the evidence presented were true (as we assume in reviewing a motion for directed verdict), that the defendant's train was ill-equipped and therefore defective.... Instead, we find no case under article 2317 supportive of the plaintiff's position. There is no evidence that a defect in the train itself caused the accident. See *Gasquet v. Commercial Union Insurance Company,* 391 So.2d 466 (La.App. 4th Cir.1980) writ refused, 396 So.2d 921, where the court held that article 2317 was inapplicable when the operator of an airboat was negligent, but when there was no defect in the airboat which caused the accident. Third, it is not merely the occurrence of the accident

which calls article 2317 into play against the custodian of an instrumentality involved. The plaintiff failed to present evidence to show that the defect, if any, was the cause of the accident. *Kinchen*, 678 F.2d at 627.

*Day v. McDermott, Inc.*, 492 So.2d 83 (La.App. 1st Cir.1986), is another example where the court found no 2317 defect. There scaffolding did not become defective because the boards upon it were not secured; it was nevertheless dangerous and negligence to leave it in that condition for several days.

The Intersouth defendants in their memorandum cite *Toussant v. Guice*, 414 So.2d 850 (La.App. 4th Cir.1982). In *Toussant*, a fire originating in the defendant's house, spread to the plaintiff's house, destroying both houses. The plaintiff contended the defendant was liable under 2317. The court rejected that theory:

> Thus unable to name any specific thing within the Guice's house as the "defect" which caused the fire, appellant nevertheless seeks to bring this case within *Loescher v. Parr*, 324 So.2d 441 (La. 1975), *supra*, by asserting that the fire itself was the defect which caused the harm. Plaintiff urges that a house afire is, by that very fact, a defective house.
>
> We disagree. The word "defect," however legally defined, implies an imperfection or deficiency which *inheres* with relative permanence in a thing as one of its qualities. But the fire which razed defendant Guice's residence was a wholly *extravenous* force, and thus cannot seriously be regarded as a "quality" of the house itself. It follows that we should not regard the fire as a defect.

*Toussant*, 414 So.2d at 852. (emphasis in original)

*Rose v. State Farm*, 468 So.2d 833 (La. App. 1st Cir.1985), is another case which illustrates that proof of a defect is a requirement for 2317 liability. In *Rose* the plaintiff motorist's trailer disconnected from his van. While the plaintiff was attempting to reconnect the trailer to the van, a truck struck the motorist's trailer injuring the plaintiff. In defense to plaintiff's suit the defendant claimed that the plaintiff was responsible for the accident under LSA–C.C. art. 2317. The court found 2317 not applicable because "no evidence was presented to show a specific defect in the trailer hitch." Id. at 836.

As the Court of Appeals recently stated, "to recover under art. 2317 or art. 2322 ... there must be a *defect*." *O'Neal v. International Paper Co.*, 715 F.2d 199 (5th Cir. 1983). (emphasis in original)

The undisputed facts demonstrate that as a matter of law plaintiff cannot establish an article 2317 defect in this case. Negligent loading of a bulldozer which creates an unreasonable risk of harm simply does not equate to a defect in the thing under article 2317. Accordingly, there can be no indemnity claim by the Intersouth defendants against the Bourg defendants. It follows that the motion for summary judgment is hereby GRANTED and the Bourg defendants (except International) will be dismissed. Plaintiff's judgment, if he gets one, is safe.